Ellsworth, J.
Several questions have been made in this case which we need not at length consider; for the main one, if decided for the defendant, as we think it must be, is decisive of the case, and must be fatal- to the title of the plaintiff as assignee of Joshua Sands.
On the 19th day of October, 1857, the defendant, a resident of the state of New York, occupying a farm near the line of the state, came into Connecticut to obtain payment of a debt due from said Sands. It appears from the motion, that the negotiation between the parties as to the mode of paying the defendant was commenced in Connecticut, continued in New York, and after-wards completed, (that is, the negotiation,) in the former state, which negotiation terminated in an agreement that the debtor should deliver to the creditor at his residence in New York, certain articles of property, (which are the articles in dispute,) in full payment and satisfaction of his debt of $590. On that day the property was accordingly carried from Connecticut and delivered, and by the creditor received, at his residence in New York, and the note was cancelled. The defendant has not at any time since brought the property into this .state, but has only made use of it in New York, as he would use his own property, *32 claiming indeed that it was his own ; and it is for this *act of conversion that he is now sued in Connecticut, having come within our borders for a temporary purpose. If these are all the. facts in the case, it is obvious, we think, that the defendant is not liable for the property. But are they indeed all ? The plaintiff insists that they are not, for he says that on the 21st of October, Sands, being, and having been on the said 19th of October, in failing circumstances and insolvent, to the knowledge of'the defendant, and intending soon to make an assignment of his property under and in conformity to the statute of the state for the benefit of insolvent debtors, assigned his property to the plaintiff,, and that the defendant knew of this law and was willing and intended by the payment aforesaid to get his debt satisfied in full, while the other creditors might be able to get theirs paid only in part.
I do not understand that there is any claim of fraud or illegality in this transaction, beyond what is implied in the effort of the defendant, (which was attended with success,) to obtain the full payment of his debt in the manner stated. This then is the question ,• was his obtaining or receiving and applying the property of the debtor in New York, where by the law of New York the preference of payment was proper and legal a valid transaction, or was it under the circumstances, fraudulent and void ?
W e are satisfied that the transfer was a good one, and if good there it is good everywhere, as the law of the situs is the law which must govern the parties in this particular transaction. The agreement between them there and here, and the delivery and acceptance of the property in New York, may well enough be viewed in two aspects—one confined to what took place in New York as the chain of title, and the other taking into account what took place in both states. Either, in my judgment, will lead to a similar conclusion. As to the first, it was agreed that the debt should be paid at the residence of the creditor in New York. The property was there tendered, and there received and applied as agreed, which, in itself, is an unexceptionable transaction, perfectly harmonious with the law of the situs, and, what is more, H ith the duty which the law recognizes in every case of a debt, of making full payment to the creditor.
In this view, I insist, the transaction should be held to be a transfer by delivery in New York, a matter falling [ *40 ] within *the exclusive jurisdiction of the state where the parties were, and where the property was to be received by the creditor, who had a perfect right to come here and to demand the payment of his debt and to insist that it should be made to him at that place. The title was thus complete and *33 perfect in New York by the accord and satisfaction and delivery. The preceding negotiation in Connecticut, even had it been confined to this state, which it was not, is not in my judgment a necessary part of the defendant’s title. His title is good without it.
If then the title was acquired in New York, why is it not good everywhere else, according to the well settled doctrine of international law, especially as toa citizen of that state? Would not her courts insist upon as much as this ? We are sure that they would, and, if so, the defendant must be held free from accountability here for using or converting this property there, unless we mean to say that among these states the rule of property does not depend upon the law of the rei situs, but every sovereignty may act upon its own notions, irrespective of titles and rights acquired elsewhere. No such notion can be tolerated for a moment as a general rule of property, for it would introduce endless confusion and conflict into all our courts of justice, and make a man’s rights of property depend upon the place he happened to be in at the time, and not upon the law of domicil or rei situs.
Quite too much stress, I must think, has been laid on a supposed violation of our statute law. In my view there is no such violation. The defendant is not chargeable with anything of the nature of an offense. Being a creditor of Sands in Connecticut, he came to him to get payment. His debtor agreed at once to pay him, and to carry the means of doing it to the creditor’s bouse in New York. He did so, and thereby paid and cancelled his note as he well might do. Was this rendered fraudulent and utterly void, because the creditor understood that his debtor in Connecticut was in failing circumstances or was insolvent, and atan early day expected to make an assignment ? We think-not. Suppose the creditor had sent a letter to his debtor, instead of coming *in person, and thereby in- [ *41 ] duced his debtor to come to him in New York and pay him, would this have destroyed the payment ? Or if the debtor, being transiently in New York, should pay his creditor in full, both parties knowing all the circumstances, would a future as- ' signment in Connecticut destroy this payment and render the creditor liable to pay the money to the assignee ? We think not. But it would be so, according to the doctrine claimed by the plaintiff’s counsel. They insist that a foreign creditor can not be put on a better ground than a domestic creditor, and surely, say they, such a payment or such an accord and satisfaction can not be allowed to a domestic creditor. Certainly not. But our law does not reach a New York transaction, nor does it *34 control a citizen of New York taking property there in payment of his debt. Such a payment ean not be defeated unless our statute is to have an extra-territorial effect, for which no one will contend ; so that the objection is not at all of the character assumed by those who urge its application to this case.
Once more, how is the assignment, made as it was two days after the delivery of the property ip New York, to affect the title by delivery on the 19th, whether we regard the entire negotiation, or the understanding of the parties and corresponding delivery in New York, as conferring title? The sale was not fraudulent and void at the time, even if it was subject tobe avoided by a future assignment, as would only be the case if it was altogether a Connecticut transaction. But it was not such ; and since the title passed on the 19th, and was good on that and the next day, it can not, after that time, be avoided in New York, unless our statute is to operate both retroactively and extra-territorially upon the transaction of the 19th, making void what was valid and legal before.
Let us look at the plaintiff’s claim in another point of view.' The defendant is said to have come into this state with full knowledge of all the circumstances, and induced the debtor to carry the property in controversy out of the state and pay his New York creditor in full, which, it is said, works a preference in favor of this particular creditor, which our statute does [ *42 ] *not allow ; and it is said that the defendant can not be allowed therefore to avail himself of it in any manner or to any extent whatever. But wherein is the wrong ? Is it in the creditor’s inducing his debtor to come into New York and pay him what he justly owed him there, or, in other words, in his inducing the defendant to keep his promise, which the law of the place pronounced to be just and obligatory ? Johnson v. Hunt, 23 Wend., 87. What then is the crime of the defendant? What has he done that is wicked or wrongful ? The thing done, I must think, is neither malum in se nor malum, prohibitum, though within this state, in a certain contingent event, the title may be taken away by an express provision of the statute in favor of a general assignee. If, before the assignment is made, the property has been sold and delivered out of the state, beyond the jurisdiction of our law, to a foreign creditor, it is not easy to see how it can be taken from the creditor, without giving to the law an extra-territorial effect which can not be admitted, and which certainly will not be allowed in that foreign state.
Our view of the case is summarily expressed in the three following propositions: 1st. The title t' %£ property in question *35 passed to the defendant in New York on the 19th day of October, by its delivery and acceptance in payment of his debt. 2d. The insolvent law of Connecticut can not subsequently divest the creditor of that property ; and 3d. A title legally acquired under the law of the situs of the property, is, as a general rule of law, good elsewhere, and will be maintained. Following these principles, we find that the judge of the superior court was in error in the view which he took of the law upon the tacts found, and that the judgment below is erroneous.
In this opinion the other judges concurred, except Butler, J., who did not sit in the case.
Judgment reversed.