FELIX CHILLINGWORTH *vs.* THE EASTERN TINWARE COMPANY ET AL.

Third Judicial District, Bridgeport, April Term, 1895. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY AND HALL, JS.

In an action to recover damages for the conversion of personal property to which the plaintiff claimed title under an execution sale, the plaintiff offered evidence that before the attachment of the property in question the execution debtor had executed and delivered a chattel mortgage of it to *P*. He also offered evidence that before the attachment, the defendant in the present suit was organized as a corporation under the laws of New York, for the purpose of carrying on business in this State; also the certificate of attachment, which recited th the land on which the property in dispute was then located formerly stood of record in the name of the execution debtor, but had recently been transferred to the present defendant; that the attached property at the time of the attachment was situated in the buildings on the premises formerly owned and occupied by the execution debtor, but then occupied by the present defendant, consisting of machinery, tools, implements, etc., and that the present defendant had the charge and possession of said property at the time of the attachment. He also offered evidence of an execution sale, before the date of the attachment, to *I*, of all the title of the execution debtor to the property in dispute, and that at the time of the execution sale to the plaintiff, the present defendant claimed to own the property in dispute, and refused to permit the plaintiff or the officer to go into the building, or to interfere with or remove any of the property; also that the chattel mortgage to *P* had been foreclosed, and that the title

to the mortgaged property become vested in the present defendant under foreclosure sale, before the date of the attachment. *Held* that the execution and delivery of the chattel mortgage to *P*, standing alone and uncontradicted, fairly tended to prove that at that date the execution debtor was the owner of the mortgaged property, and that in the absence of anything to the contrary the presumption would be that this ownership continued up to the time of the attachment and the levy of the execution; but that this presumption was overcome by the other evidence introduced by the plaintiff, as above detailed, and consequently the trial court committed no error in granting defendant's motion of nonsuit.

The general rule that the *lex loci* is to govern in the construction of contracts is, theoretically at least, founded upon the presumption that the parties intended to contract with reference to that law; but when the contract is to be performed elsewhere, or is to have its entire beneficial operation and effect elsewhere, then the law of the latter place is to govern, because in the absence of anything to the contrary it is presumed that the parties so intended. Accordingly, upon the facts found in the present case, it was *held* that the validity of the mortgage must be determined by the laws of Connecticut, under which it was valid, and could be set aside only by proceedings in insolvency.

[Argued April 23d—decided June 22d, 1895.]

ACTION in the nature of trespass *de bonis asportatis*, brought to the Superior Court in New Haven County and tried to the court, *George W. Wheeler, J.;* judgment of nonsuit rendered which the court upon motion declined to set aside, and the plaintiff appealed for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*James H. Webb*, with whom was *John A. Garver* of New York, for the appellant (plaintiff).

I. A nonsuit should not be granted, if there is any evidence which, favorably construed, would support a judgment in favor of the plaintiff. 16 Amer. & Eng. Ency. of Law, 741, 742; *Spensley* v. *Lancashire Ins. Co.*, 54 Wis., 433, 439; *Clemence* v. *Auburn*, 66 N. Y., 334, 338; *Colt* v. *Sixth Ave. R. R. Co.*, 49 id., 671.

II. That the chattels were owned by the Stamping Company on July 13, 1887, was proved beyond any dispute, and was conceded by the court. That they were situated

in the same building when the levy was made in which they were contained at the time the chattel mortgage was executed, also appeared.   No evidence whatever was given to show any change in such ownership, except the fact that at the time of the levy, sixteen months later, the Eastern Tinware Company was in possession.   The sole question before the court upon this point, therefore, is whether, when ownership is once shown to exist, the presumption of its continuance will fail merely because another person is subsequently found in possession, no explanation being given tending to show the nature or character of the possession. Among the presumptions of continuance, none is more firmly established than that of ownership, all the authorities holding that this will be presumed to continue until there is clear and positive evidence that it has changed.   Underhill on Evidence (Ed. 1895), § 231; 1 Greenleaf on Evidence, § 41; 2 Wharton on Evidence, § 1289; *Gray* v. *Finch*, 23 Conn., 495, 512, 513; *Hale* v. *Wiggins*, 33 id., 101, 104; *Brown* v. *King*, 5 Met., 173; *Magee* v. *Scott*, 9 Cush., 148; *Fry* v. *Bennett*, 28 N. Y., 324, 330; *Hagar* v. *Clark*, 78 id., 45; *Bennett* v. *Ins. Co.*, 51 Conn., 504, 510; *Avery* v. *Clemons*, 18 id., 306; *Rawley* v. *Brown*, 71 N. Y., 85.

III.  There was no proof of any change of ownership in the present case.   The only change shown was that of possession; but the character or nature of the possession did not appear.   It is stated in the most recent publication on evidence, that the presumption of ownership from possession is very slight.     Underhill on Evidence, § 229; *Avery* v. *Clemons, supra; Rawley* v. *Brown, supra.*   The plaintiff in the present case had shown the absolute ownership of the property in the United States Stamping Company; and the court below allowed the mere unexplained fact of possession in another person, to act as a conclusive presumption of ownership to rebut the fact which had been affirmatively proved.

IV.  The trial court erred in holding that the chattel mortgage was valid in Connecticut.   The principle is well established that the validity of a contract is governed by the law of

the domicile, and of the place where the contract is made. *Smith* v. *Mead*, 3 Conn., 253; *Medbury* v. *Hopkins*, 3 id., 472; *Brackett* v. *Norton*, 4 id., 517, 520; *Van Buskirk* v. *Hartford Fire Ins. Co.*, 14 id., 582; *Mead* v. *Dayton*, 28 id., 33; *Koster* v. *Merritt*, 32 id., 246; *Clark* v. *Conn. Peat Co.*, 35 id., 303; *Webster* v. *Howe Machine Co.*, 54 id., 394.

V. In granting the nonsuit, the court below held that chattel mortgages constituted an exception to the universal rule, for the reason that they were required to be recorded where the property is situated, and hence that the law of the place of record must govern ; and the following authorities were cited which were supposed to sustain this view : Jones on Chattel Mortgages, § 305; Wharton, Conflict of Laws, § 317; 3 Amer. & Eng. Ency. of Law, 190; *Warner* v. *Jaffray*, 96 N. Y., 248; *Keller* v. *Payne*, 107 id., 83, 89; *Green* v. *Van Buskirk*, 7 Wall., 139; *Ames Iron Works* v. *Warner*, 76 Ind., 513; *Clark* v. *Tarbell*, 58 N. H., 88.

Not one of the foregoing authorities decides, or even remotely intimates, that a chattel mortgage executed in one State and covering chattels in another State, is void in the latter State as between the parties to it, when not recorded there. The authorities merely decide that such a chattel mortgage is not valid as against attaching creditors in the State where the property is situated, who may attach the property before the mortgage is recorded or the property reduced to possession by the mortgagee. The plaintiff was not asserting the validity of the mortgage in another State, which had not been properly recorded there, though this was the point of the authorities cited by the other side. On the contrary, the plaintiff's contention is, and always has been, that the instrument, being utterly void in New York, where it was executed and where the parties were domiciled, was also void in Connecticut. While the general rule that a contract valid where executed is valid everywhere is subject to some exceptions, there is no exception to the general rule that a contract void where executed is void everywhere. Story, Confl. of Laws, § 243; *Alves* v. *Hodgson*, 7 T. R., 241; *Andrews* v. *Pond*, 13 Pet., 65, 78;

*Moore* v. *Clapton*, 22 Ark., 125; *McAllister* v. *Smith*, 17 Ill., 328; *Titus* v. *Scantling*, 4 Blackf., 89; *McDaniel* v. *Ry. Co.*, 24 Iowa, 417; *Ford* v. *Ins. Co.*, 6 Bush, 133; *Kennedy* v. *Cochrane*, 65 Me., 594; *Trasher* v. *Everhart*, 3 Gil. & J., 234; *Houghton* v. *Page*, 2 N. H., 42; *Ivey* v. *Lalland*, 42 Miss., 444; *De Costa* v. *Davis*, 24 N. J. L., 319; *Van Schaick* v. *Edwards*, 2 Johns Cases, 355; *Chambers* v. *Church*, 14 R. I., 398; *Touro* v. *Cassin*, 1 Not. & McC., 173.

VI. The chattel mortgage was void by the law of New York. Laws 1825, Ch. 335, § 6, p. 450; 2 R. S., 7th ed., 1534, § 4; 2 R. S., 8th ed., 1729, § 4; *Kingsley* v. *First Nat. Bank*, 31 Hun, 329; *Brouwer* v. *Harbeck*, 9 N. Y., 589, 595; *Webster* v. *Howe Machine Co.*, 54 Conn., 394, and N. Y. cases there cited; *Robinson* v. *Bk. of Attica*, 21 N. Y., 406; *Harris* v. *Thompson*, 15 Barb., 62; *Loring* v. *Gutta Percha Co.*, 30 id., 644; *Throop* v. *Hatch Lithographic Co.*, 125 N. Y., 530, 533; *Gillet* v. *Phillips*, 13 id., 114, 119; *Herrick* v. *Vorst*, 4 Hill, 650; *Walkenshaw* v. *Perzel*, 32 How. Pr., 233, 240; *Brown* v. *Montgomery*, 20 N. Y., 287, 291; *Yates* v. *Hoffman*, 5 Hun, 113; *In re George*, Lowell, 409.

*Henry Stoddard*, for the appellees (defendants).

I. Whatever inference was to be drawn from the execution of the mortgage and the attachment, the other evidence and facts entirely destroy the possible inference of ownership in the United States Stamping Company, and proves that the Stamping Company had no title to the property at the time of the said alleged attachment and levy.

The plaintiff contends that the mortgage in question to Auguste Pottier was made in contemplation of insolvency within the meaning of the N. Y. statute, and that therefore that mortgage is invalid.

The answer of the defendant to this claim of the plaintiff is several fold: First, there is no competent or sufficient evidence to indicate that the mortgage was made in contemplation of insolvency, or in violation of the statute. Second, the operation of that statute is confined to the territorial limits of the State of New York, being a statute designed

to prevent preferences among creditors, and wholly confined to transactions within the territorial limits of that State. Third, the statute in question can have no operation upon property which had always been located, and then was located, in Connecticut, and especially property of the character involved, capable under the policy of the law in Connecticut of being mortgaged in the same manner as real estate.

The object and purposes of the statute of New York referred to, seem to be confined to securing the ratable distribution of property under the law of New York, and under proceedings in the State of New York, to the several creditors of the corporation designated in the statute. The statute is one of several statutes of that State, all looking to the same end and seeking to accomplish the same purpose, to wit, to regulate in the courts of the State of New York the equitable distribution of the assets of insolvent debtors, and to prevent preferences. *Braen* v. *M. N. Bank*, 127 N. Y., 513; *Cole* v. *M. I. Co.*, 133 id., 168; *Throop* v. *H. L. Co.*, 125 id., 533; *Varnum* v. *Hart*, 119 id., 101; *Kingsley* v. *First Nat. Bank of Bath*, 31 Hun, 333. But irrespective of the construction to be placed upon the New York statute, the law seems to be settled, that as the property was in Connecticut — and especially so when the character and nature of the property itself is considered in reference to the policy of the legislation of this State—the validity of any transfer and mortgage of said property is to be determined by the law of Connecticut, where the property was located. The following are some of the authorities in point: *Warner* v. *Jaffrey*, 96 N. Y., 255, 257; *Green* v. *Van Buskirk*, 7 Wall., 139; *Hervey* v. *The Rhode Island Locomotive Works*, 93 U. S., 664; *Walworth* v. *Harris*, 129 id., 362–366; *Hope* v. *Brewer*, 136 N. Y., 139; Jones on Chattel Mortgages, § 305; *Keller* v. *Paine*, 107 N. Y., 89; *Ames Iron Works* v. *Warner*, 76 Ind., 513; *Clark* v. *Tarbell*, 58 N. H., 88; Wharton's Conflict of Laws, § 317; 3 Amer. & Eng. Ency. of Law, 190. It is generally the law that chattel mortgages and their subject-matters partake so much

of a local nature, that their validity must be determined by the law of the place where the property is located. *Ethridge* v. *Sperry*, 139 U. S., 276, 277.

II. The levy and sale was invalid, for the reason that the levy was made on the 25th of March, and the alleged sale took place on the 16th day of April, 1891, there being more than twenty-one days intervening between the levy and the sale. *Morey* v. *Hoyt et al.*, 65 Conn., 516; *Webster* v. *Peck*, 31 id., 497. Also because the officer had no possession of the property, and the entire proceeding had no substance or reality, and was a mere sham and wholly colorable.

TORRANCE, J. This is an action to recover damages for the conversion of personal property to which the plaintiff claimed title under an execution sale. The defense was a general denial.

On the trial below the plaintiff claimed that the property described in the complaint was formerly the property of the United States Stamping Company, a manufacturing corporation organized under the laws of the State of New York, and carrying on business in Portland in this State; that in November, 1888, one Samuel H. Smith brought a suit against said Stamping Company in the Superior Court for Middlesex County in this State, and attached therein said property in Portland as the property of said corporation; that afterwards, in February, 1891, judgment by default was rendered in said suit in favor of Smith for thirty thousand dollars; that upon said judgment an execution was issued and levied upon the attached property in March, 1891; and that in April, 1891, said property was duly sold under said execution to the plaintiff. The evidence offered by the plaintiff in support of these claims was mostly documentary.

One of the important questions in the case was whether the United States Stamping Company at the time of the attachment or the levy and sale aforesaid, owned or had any interest in the personal property described in the complaint; and to prove that it had, the plaintiff, among other

matters, put in evidence the fact that said corporation in July, 1887, made and delivered a chattel mortgage of said property to August Pottier, to secure an indebtedness from it to him of nearly sixty thousand dollars. This was substantially all the evidence offered by the plaintiff on this point in the case.

He also offered evidence tending to show that this chattel mortgage was executed by said corporation in contemplation of insolvency, and claimed that if the mortgage was so executed, it was void under the laws of New York. The defendant claimed that the chattel mortgage was valid. After the plaintiff had rested his case the defendant moved for judgment as in case of nonsuit, on several grounds, among which were these two on which the court granted the motion, namely : that the evidence did not show *prima facie* that the Stamping Company owned or had any interest in the property at the time of the attachment or levy and sale under which the plaintiff claimed ; and because, assuming the validity of the chattel mortgage aforesaid, the evidence showed that the levy under which the plaintiff claimed, ignored the existence of said mortgage, and was therefore invalid. The court below rendered judgment as of nonsuit, and refused on motion made for that purpose to set it aside, and the plaintiff appealed to this court.

The first question is whether the plaintiff's evidence fairly tends to show that the Stamping Company owned the property at the time in question. As before stated, the plaintiff's case, upon this point of it, rests chiefly upon the evidence relating to the execution and delivery of the chattel mortgage.

We think it must be conceded that the evidence upon this point, if it stood alone and uncontradicted, does fairly tend to prove that the Stamping Company was the owner of the property in July, 1887 ; and in the absence of anything to the contrary the presumption would be that this ownership continued up to the time of the attachment and the levy of the execution. But this evidence as to the execution and delivery of the chattel mortgage does not stand

alone, and the defendant claims that its probative force is entirely overcome by the other evidence introduced by the plaintiff in the case. That other evidence in substance consists of the following matters :—

The organization in September, 1888, of the Eastern Tinware Company, one of the defendants, under the laws of New York, for the purpose of manufacturing tin ware in Portland in this State, of which corporation Joseph Scheider, the other defendant, was and is the president; the certificate of attachment in the case of Smith v. The United States Stamping Co., dated November 22d, 1888, which recites that the land in Portland, on which the property here in dispute was then located, formerly stood of record in the name of the United States Stamping Company, "but has recently been transferred to the Eastern Tinware Company"; and further reciting that the property here in dispute, and which was then attached, was then "situated in the buildings on the premises formerly owned and occupied by the United States Stamping Company in said Portland, but now occupied by the Eastern Tinware Company, and consisting of machinery, tools, implements, etc."; and further reciting that the Eastern Tinware Company had "the charge and possession" of the personal property attached at the time of the attachment; evidence showing an execution sale to Rebecca E. Ingersoll, in August, 1888, of all the right, title and interest of the United States Stamping Company in and to substantially all of the property here in dispute; and also evidence tending to show that at the time of the execution sale to the plaintiff, the Eastern Tinware Company claimed to own the property in dispute, and then refused to permit the plaintiff or the officer to go into the building, or to interfere with or remove any of the property.

It furthermore appears from the record, by statements of plaintiff's counsel, that the Pottier mortgage was foreclosed, and the property covered by it—which is the property here in dispute—sold under such foreclosure on the 4th of August, 1888, and that the title to said property under said

foreclosure sale, ultimately became vested in the Eastern
Tinware Company prior to the Smith attachment in No-
vember, 1888.    These statements of counsel are not strictly
speaking evidence in the case, and they were made, princi-
pally, in the hearing upon the plaintiff's motion to re-open
the case ; nevertheless we think they should be taken into
account in determining whether the court below erred in
granting the nonsuit.    They were made in open court, for
the purpose of giving to the court in this informal way such
knowledge of the matters as the counsel possessed, and for
the legitimate purpose of influencing the action of the court.
Of course these statements of counsel for the plaintiff as to
the foreclosure of the chattel mortgage, and as to the title
thereby acquired vesting in the plaintiff, must be taken in
connection with his claim that the mortgage was void, and
therefore all the proceedings under it were of no effect as
against Smith, or the plaintiff who claims under him.

The foregoing is the substance of the evidence in the
case bearing against the presumption that the ownership of
the Stamping Company continued till the time of the
Smith attachment.    Taking it altogether and assuming the
validity of the chattel mortgage, we think it entirely over-
comes the presumption in question ; and even if we assume
the invalidity of the chattel mortgage, we still think the other
evidence in the case tends fairly to show that the Eastern Tin-
ware Company, at the time of the attachment, was in exclusive
possession of this property, claiming it as its own ; and that
such evidence overcomes the presumption relied upon by
the plaintiff, and leaves him substantially in the position of
one having no material evidence upon a vital point in his
case.

The conclusion here reached makes it, perhaps, unneces-
sary to examine the second ground upon which the nonsuit
was granted, involving the question as to the validity of the
chattel mortgage of July, 1887 ; but as that was a promi-
nent question in the case, and may come up again if another
suit is brought, and has been fully argued before us, we

have deemed it advisable to express our views, briefly, upon that question.

The mortgage in question was made by a New York corporation to a creditor of the same State, and it fairly appears from the evidence that the instrument was made and executed in New York on the 13th of July, 1887. Whether it was delivered in New York or in Connecticut does not perhaps clearly appear, but for our present purpose it is perhaps fair to assume that it was delivered in New York. Upon this point in the case the plaintiff's claims, briefly stated, are these: This mortgage was made in the State of New York by a New York corporation in contemplation of insolvency; its validity is to be determined by the law of the State where it was made; by that law it was utterly void; and that being so, neither recording it in Portland, nor any other subsequent act could give it any validity.

We think it must be conceded, upon the evidence as it stands, that the mortgage was made in contemplation of insolvency within the meaning of the New York statute; and also that it comes within the language of the New York statute which declares such a transfer to be utterly void. 3 R. S., 8th Ed., 1729, § 4.

The plaintiff's claim is based upon two assumptions, namely: that the mortgage must be regarded as a New York transaction, entered into with reference to the laws of New York; and that it comes within the spirit of the New York laws, and would be held by the courts of that State to be void. With regard to this last assumption it may be questionable whether the New York courts would hold that a mortgage of real estate or personal property situated outside of that State, comes within the spirit of the law; and we are not aware of any case there where it has been so held. In *Roe* v. *Jerome*, 18 Conn., 138, a New York attorney purchased in New York an inland bill of exchange for the purpose and with the intent of bringing a suit upon it in Connecticut. His act in so doing came clearly within the language of the New York law, which made such a purchase for the purpose of bringing suit upon it, a misdemeanor pun-

ishable by fine and imprisonment and disbarment; but this court held that such a purchase for the purpose of bringing suit upon it in Connecticut was not within the spirit of the law, and was not prohibited. In this view of the matter it is perhaps not clear that the New York courts would hold the mortgage to be void; but however this may be, we think the transaction must be regarded as a Connecticut transaction entered into with reference to Connecticut law, and that in this aspect of it our courts must regard it as a valid transaction, whatever view the courts of New York might take with regard to it.

The mortgagor was, indeed, a New York corporation, but it was empowered to do business in this State, and for some years prior to the mortgage its principal business had been carried on here, and so far as the evidence shows, nearly all its property was here. At and before the time of the mortgage it owned valuable real estate here, on which, at the time of the mortgage, all the property covered by the mortgage was situated, consisting of machinery fixed and movable, and tools and implements of divers kinds, in permanent use there in connection with the business carried on in Portland. The mortgage described all of the property as property situated in Portland in the factory of the mortgagor; it was made, executed, witnessed and acknowledged, as required by our law; on the day after its execution it was duly recorded on the Portland land records as required by our law; and it was executed before a commissioner for this State in New York. The mortgage affected no property in New York, and was not intended to have any operation or effect upon property there situated; it affected and was intended to affect Connecticut property only, and to have its entire beneficial operation and effect as a security here. Under these circumstances the mere fact, if it be so, that the instrument was formally executed and delivered in New York is not, of itself, decisive of the question as to what law shall control in determining the validity of the mortgage.

The general rule that the *lex loci contractus* shall govern in this matter is, theoretically at least, founded upon the

presumed intention that the parties contracted with reference to that law; and when the contract is to be performed elsewhere, or is to have its entire beneficial operation and effect elsewhere, then the law of the latter place is to govern; because, in the absence of anything to the contrary, it is presumed that the parties so intended. "The rules already considered, suppose that the performance of the contract is to be in the place where it is made, either expressly or by tacit implication. But where the contract is, either expressly or tacitly, to be performed in any other place, there the general rule is, in conformity to the presumed intention of the parties, that the contract, as to its validity, nature, obligation, and interpretation, is to be governed by the law of the place of performance." Story's Conflict of Laws, § 280. "Contracts are to be construed and interpreted according to the laws of the State in which they are made, unless from their tenor it is perceived that they were entered into with a view to the laws of some other State." *Blanchard* v. *Russell*, 13 Mass., 1, 5. In *Greathead* v. *Walton*, 40 Conn., 226–236, this court said: "If the law of New York would not, under the circumstances, impose any liability on the defendant, we must take it for granted that the parties entered into this contract with reference to the laws of Connecticut, under which, certainly, a liability was incurred. 'Natural Justice,' says Mr. *Justice Blackburn* in his work on Sales, 'mutual convenience, and the practice of all civilized nations, require that contracts, wherever enforced, should be regulated and interpreted according to the law with reference to which they were made.'" This principle was applied also in *Mason* v. *Fuller*, 36 Conn., 160, where a marriage solemnized in the State of Massachusetts, and entered into with reference to Connecticut law was, for the purpose of determining the property rights of the parties, held to be a Connecticut marriage.

Suppose the instrument in question had been made, executed and delivered in New York to the mortgagee, with the understanding between the parties that the property

therein described was to be delivered in Connecticut next day, and in accordance with that understanding the property had been actually so delivered next day; could there be any doubt in such case that the law of this State would govern as to the validity of the instrument? We think not. The case supposed is substantially the case of *Mead* v. *Dayton*, 28 Conn., 33. There the contract of sale was made in Connecticut, with an agreement, for the express purpose, known to both parties, of evading our insolvent laws, that the property should be delivered in New York, which was done. The court held it to be a New York transaction, the validity of which was to be determined by the laws of that State. In the case at bar no actual delivery of the property was made in this State, nor was such a delivery probably contemplated at the time of the sale; but this was only because the recording of the mortgage in Portland was a substitute for such delivery, and was the legal equivalent thereof. That act, so far as there was any real value to the mortgage, was the consummating act, and must have been so regarded by the parties.

Under the circumstances disclosed by the evidence in the case as it stands, we think the mortgage must be regarded as if the transaction, begun in New York, had been performed and completed here in Connecticut; and under our law we think the corporation might prefer in this way one of its creditors, and that the preference where there was no actual fraud—and none was claimed or appears to exist in this case—could only be set aside by proceedings in insolvency. *Warner Glove Co.* v. *Jennings*, 58 Conn., 74.

This view of the case renders it unnecessary to consider the other grounds upon which the defendant asked for a nonsuit.

There is no error.

In this opinion the other judges concurred.