## COCKRELL *et al.* v. SCHMITT.

No. 1892, Okla. T.   Opinion Filed Feb. 18, 1908.

(94 Pac. 521.)

1. PLEADING—Motions—Separating and Numbering Causes of Action. Where it is not obvious that the petition states more than one cause of action, it is not error to overrule a motion to require plaintiff to separately state and number the several causes of action, when the motion is a general one and fails to specify wherein the petition states more than one cause of action.

2. SAME—General Demurrer—Pleading Good in Part. Where a general demurrer is filed to a petition as a whole, if any paragraph of the pleading is good and states a cause of action, a demurrer should be overruled.

3. EVIDENCE—Chattel Mortgages—Recitals of Ownership—Presumptions. As the law presumes that all acts are done in good faith until there is evidence to the contrary, a chattel mortgage, in evidence containing the statement that the "mortgaged property is owned entirely by and is now in possession of said party of the first part at his home in Lincoln township, Blaine county, Oklahoma. * * *" fairly tends to prove the same, and will be regarded as prima facie evidence of the truth of the statement, in the absence of evidence to the contrary. (Hayes, J. dissents.)

4. TRIAL—Prima Facie Case—Directing Verdict. If the evidence on behalf of plaintiff is sufficient to prove his cause of action, and there is no substantial evidence offered by defendant upon

any material issue in the case, it is not error for the trial court to instruct the jury to return a verdict for the plaintiff.

5.    EXECUTION — Judgment — Necessity — Secondary    Evidence. Where the sheriff seeks, in an action of replevin, to justify the seizure of property under an execution issued in another case, he must prove a valid and subsisting judgment in that case before he can attack a transfer of the property levied on as made in fraud. of creditors.   Where said judgment has been rendered but not entered upon the journal .as required by law, it is not error to exclude secondary evidence offered in proof thereof.

(Syllabus by the Court.)

*Error from District Court, Blaine County; before James K. Beauchamp, Judge.*

Replevin by Maggie Schmitt against A. S. Bridgford, as sheriff, in which action E. B. Cockrell and another were made parties defendant.   Judgment for plaintiff, and defendants bring error. Affirmed.

On March 12, 1902, Maggie Schmitt, defendant in error, plaintiff below, brought this, a suit in replevin, against A. S. Bridgford, sheriff of Blaine county, plaintiff in error, defendant below, in the probate court of that county to recover, as owner, eight head of cows, two two-year-old heifers, eight head of short yearling cattle, and one three-year-old bull, and for one span of mules, one span of bay mares, and two brood sows with ten suckling pigs, in which she claimed a special ownership by virtue of a chattel mortgage made and delivered to her by her husband, Martin Schmitt, on February 26, 1901, to secure a $500 note of that date payable to her by him in three years, which had been levied on by the sheriff as the property of said Schmitt under an execution issuing out of the probate court of Blaine county in the case of E. B. Cockrell and W. S. Bradley against said Schmitt, dated November 26, 1901.   On the same day, March 12, 1902, an order of delivery issued and placed her in possession of said property, which she has since retained.

On April 14, 1902, plaintiffs in error, E. B. Cockrell and W.

S. Bradley, were made parties defendant and entered their appearance.

On August 28, 1902, the case went to trial and resulted in a judgment, in part, for plaintiff, from which she appealed to the district court. On March 20, 1905, trial was had in the district court, and at the close of the testimony on both sides the court directed the jury to return a verdict for plaintiff, which was done and exceptions noted. There was final judgment, motion for a new trial by defendants filed and overruled, and exceptions noted, a petition in error and case-made duly filed in this court, and the case is before us on appeal.

*Stephens & Myers,* for plaintiffs in error.
*Hotchkiss & Emery,* for defendant in error.

TURNER, J. (after stating the facts as above). In her second amended petition, defendant in error, hereafter called "plaintiff," included in the same cause of action the property in controversy of which she claimed to be owner, and the property in which she claimed special ownership by virtue of a certain chattel mortgage filed with her petition and marked "Exhibit A" and the first assignment of error made by plaintiffs in error, hereafter called "defendants," is:

"That the court erred in overruling the motion to require plaintiff below to separately state and number the several causes of action in the second amended petition."

As it is not obvious to us that the petition states more than one cause of action, and as the motion is so general as not to inform us, and as no authority is cited in support of the motion in defendant's brief, we cannot see wherein the court erred in overruling the motion. *Ambrose v. Parrott,* 28 Kan. 693, citing *Gilmore v. Norton,* 10 Kan. 491; *Kerr v. Reese,* 27 Kan. 338. In *Grimes v. Cullison,* 3 Okla. 268, 41 Pac. 355, the court said:

" * * * That in the motion to make more definite and certain the defendants below failed to point out wherein the petition

Vol. 20—14

was indefinite and uncertain, and we do not think, in the absence of such matter in a motion, that the court below committed any error in overruling the same. If the petition be indefinite or uncertain, it is the duty of counsel, in moving to have the same made more definite and certain, to specifically set out wherein they desire relief at the hands of the court; if they fail to so set out in their motion, it is not error to overrule the same."

The next assignment of error is that "the court erred in overruling the demurrer of defendants below to petition of said plaintiff below." It is urged that "the petition is fatally defective for the reason that it fails to charge anywhere that at the time of the execution of the mortgage Smith was the owner of the property described therein, or that he had any right to mortgage the same." The chattel mortgage is attached to the petition as an exhibit, in which is stated, among other things, that the mortgaged "property is owned entirely by and now in possession of said party of the first part at his home in Lincoln township, Blaine county, Oklahoma * * *." Without passing upon the question as to whether or not the allegations contained in the exhibit should be considered as a part of the petition, in passing upon this demurrer we think it sufficient to say that it is a well-established rule of this court that where a general demurrer is filed to a petition as a whole, if any paragraph of the pleading is good and states a cause of action, the demurrer should be overruled. *Hurst v. Sawyer*, 2 Okla. 470, 37 Pac. 817; *City of Guthrie v. Harvey Lumber Co.*, 5 Okla. 774, 50 Pac. 84. There can be no doubt that the petition states a cause of action for the property set forth in that paragraph in which the plaintiff claims a general ownership, and for that reason there was no error in overruling the demurrer.

The next error assigned which we think necessary to notice is: Did the court err in directing the jury to find a verdict for the plaintiff? The record discloses that plaintiff claimed the right of possession to a part of the property in controversy as owner, and as to the other part of special ownership by virtue of a chattel

mortgage from her husband. Defendants pleaded a general denial, directed their proof toward establishing title to the property levied on in Martin Schmitt, plaintiff's husband, that it had been conveyed by him to plaintiff in fraud of creditors, and sought to justify the levy under an execution issued against the property of Martin Schmitt. In passing upon this question, it is well to remember "that plaintiff must recover on the strength of his own title." Wells on Replevin, p. 54, citing *Easter v. Fleming*, 78 Ind. 116; *Gallick v. Bordeaux*, 31 Mont. 328, 78 Pac. 583; *Hall v. So. Pac. Co.*, 6 Ariz. 378, 57 Pac. 617; *Bardwell v. Stubbert*, 17 Neb. 485, 23 N. W. 344.

It might be well to add:

"If the evidence on behalf of plaintiff is sufficient to prove his cause of action, and there is no substantial evidence offered by defendant upon any material issue in the case, it is not error for the trial court to instruct the jury to return a verdict for the plaintiff." (*Irwin v. Dole*, 7 Kan. App. 84, 52 Pac. 916).

Otherwise stated, the rule is: "Where there is no sufficient evidence of a fact essential to the plaintiff's case or the defendant's affirmative defense, a verdict should be directed." (6 Am. & Eng. Enc. of Law, 686, and cases cited).

Let us examine the evidence and see whether plaintiff has made a *prima facie* case, and, if so, what evidence defendants, if any, have adduced to rebut it. The testimony tends to prove that plaintiff was married to Martin Schmitt in Illinois about December 25, 1890; that up to that time she had worked for wages and had saved some $187. After her marriage they lived on a farm in that state for about five years, and then moved to Iowa, taking with them two cows belonging to her, where, with the money she brought with her and claimed as her separate property, she bought five head of cows and five sows. Shortly after they went to Iowa he bought a farm of 86 acres near Fremont in that state, taking the title in his own name. The stock owned by plaintiff was kept on this place and was sold from time to time, together with its increase, during the last three years of their resi-

dence there, plaintiff realizing in all therefrom some $650 or $700 which she "put in the place." This farm was sold in 1900, and the money derived from the sale of it was deposited in the name of her husband in the bank at Fremont. The proof shows that she did business in buying and selling stock in her own name while in Iowa. She states, and it is not denied, that there was coming to her from her husband about $1,300 at the time they arrived in Oklahoma out of the proceeds of the place they sold in Iowa. Her husband brought $2,240 from Iowa, and deposited from time to time something near $2,000 in the First National Bank at Geary, which she says she sent and got through him when she needed it. It seems that before they both arrived in Oklahoma Martin Schmitt had gone to Watonga, where, on September 1, 1900, he made, executed, and delivered to one H. G. Easton his promissory note of $250 with interest at the rate of 8 per cent. per annum, it seems, in a certain land deal not fully set out in the testimony. This note was afterwards conveyed to the plaintiffs in error, E. B. Cockrell and W. S. Bradley, who sued Schmitt thereon on the 11th day of February, 1901, and recovered judgment July 16, 1901. Execution was issued thereon November 26, 1901, and placed in the hands of plaintiff in error, A. S. Bridgford, as sheriff of Blaine county, which said execution was on March 11, 1902, levied on the property in controversy in this suit as the property of Martin Schmitt. Eight hundred dollars of the $1,300 which her husband owed her as the proceeds of her cattle sold in Iowa were paid her by him in cash, and a certificate of $500 a short time after they arrived from Iowa. On February 3, 1902, she received $581 from her father's estate in Illinois, and deposited that amount a few days afterwards in the First National Bank at Watonga. She testified, and it is not denied, that in the spring of 1901 she bought a cow and calf from Ben Ice and paid him $39, and in May following several head from one Husenmeyer and one cow from Reynolds; that in all she bought that spring eight cows, eight head of short yearlings, two head of heifers and one bull,

all of which were levied on in this cause; that the same was her sole and separate property; that on February 26, 1901, her husband, who owed her $500 balance due on the $1,300 aforesaid, made, executed, and delivered to her a chattel mortgage covering the property levied on by the officer in this cause, in which she claimed a special interest and introduced a note and mortgage in evidene as proof of her title thereto; that all the property levied on in this cause and claimed by her in this suit was taken under the execution while on their place. There was no controversy over the identity of the property described in the complaint or mortgage, and that levied on by the officer in the trial of this cause in the court below, and no such question is raised in the briefs of counsel.

The defendants, to maintain the issues on their part, and to justify under the writ, offered to prove the judgment of the probate court of Blaine county from which the execution was issued and levied by A. S. Bridgford as sheriff of the county on the property in controversy in the cause. The evidence showed, however, that no such judgment had been entered on the journal of said court. On its appearance docket appeared a statement to the effect that judgment had been rendered in favor of the defendants E. B. Cockrell and W. S. Bradley v. Martin Schmitt, and among the papers in the case was found a journal entry signed by the probate judge corresponding to the entry on the appearance docket. Defendants offered in evidence said journal entry and the entry on the appearance docket to prove said judgment. The court sustained an objection to their introduction, which was excepted to and is assigned and urged here as error.

Now, it is evident that, in order to justify under this writ, the burden of proof is upon the defendant to support the execution by proof of a valid judgment existing at the time the execution issued (*Shue et al. v. Ingle,* 87 Ill. App. 522; *Annis v. Bell,* 10 Okla. 647, 64 Pac. 11), and this he must do before he can attack the chattel mortgage in evidence as a fraud upon creditors,

which defendants attempted to do in this case. Wells on Replevin, p. 285, says: "Where property seized on execution is replevined from the officer and he wishes an order for return, he must not only plead the execution and a judgment, but a valid execution and judgment must also be given in evidence to support the plea." *Glascock v. Nave,* 15 Ind. 458; *Beach v. Botsford,* 1 Doug. (Mich.) 199, 40 Am. Dec. 45; *Clay v. Caperton,* 1 T. B. Mon. (Ky.) 10, 15 Am. Dec. 77; *Sandeford v. Hess,* 2 Head (Tenn.) 680. Same, p. 284, says: "An officer seeking to impeach the plaintiff's title as fraudulent as to creditors must show a valid judgment * * *" and cases cited.

Was the evidence offered to prove the judgment admissible? Wilson's Rev. & Ann. St. Okla. 1903, § 4603, provides:

"All judgments and orders must be entered on the journal of the court, and specify clearly the relief granted or order made in (the) action."

It is clear that under this above provision it was the duty of the probate judge or his clerk to have entered the judgment in that case upon the journal of the court. It seems that they did not do so, as the only evidence offered to prove it was the appearance docket and the journal entry aforesaid, and the question presented to us upon this alleged error is, whether said judgment, having been rendered in said court and not entered upon its records, can be proved by the character of evidence offered as above. We must answer the question in the negative. A judgment rendered by the court, although not entered as required by law; is valid as between the parties, but the record entry of the judgment itself must be introduced in evidence when made the basis of a claim in another action.

Black on Judgments, p. 115, says:

"And again, the record entry of a judgment is indispensable to furnish the evidence of it when it is made the basis of a claim or defense in another court."

1 Greenleaf on Evidence, par. 508, says:

"And the record itself must be finally completed before the

copy is admissible in evidence. The minutes from which the judgment is made up, and even a judgment in paper, signed by the master, are not proper evidence of the record."

*Blain v. Nunn, Sheriff,* 63 Iowa, 641, 19 N. W. 810. See also, *Brown v. Hathaway,* 10 Minn. 303 (Gil. 238).

"It seems that a subsequent judgment *nunc pro tunc* will not suffice." (*Shue v. Ingle,* 87 Ill. App. 522).

It follows that defendants, not being judgment creditors, could not attack the sale or conveyance of any of the property in controversy for fraud, that no evidence adduced by them could properly be considered on those issues by the trial court, and that judgment for plaintiff was properly directed, unless the next contention of defendants is true.

Invoking the rule that plaintiff must recover on the strength of her own title, defendants insist that the record discloses no evidence that, at the time of the execution of the mortgage, Martin Schmitt was the owner of the property described therein or that he had a right to mortgage the same, and that the mere recitation to that effect in the mortgage introduced in evidence was not proof of his ownership of the property at that time. The mortgage states that the "mortgaged property is owned entirely by and now in possession of said party of the first part at his home in Lincoln township, Blaine county, Oklahoma, * * *"; but it is urged that this is not sufficient. Let us see. As stated, defendants, having failed to show that they were judgment creditors, were not entitled to attack his conveyance for fraud. Now, in the face of that statement in the mortgage they would have us presume, in the absence of evidence of fraud, that Martin Schmitt mortgaged something he did not own.

"The law presumes that all acts are done in good faith until there is evidence to the contrary." (*McCragg et al. v. Heacock et al.,* 34 Ill. 476, 85 Am. Dec. 327).

What probative force, then, should the court below, in passing upon this motion, have given this chattel mortgage stand-

ing before it unimpeached and fair on its face? Was it sufficient evidence to prove that at the time of the execution of the mortgage Martin Schmitt was the owner of the property described therein and had a right to convey the same?

*Chillingworth v. Eastern Tinware Co. et al.*, 66 Conn. 306, 33 Atl. 1009, was an action to recover damages for the conversion of personal property to which the plaintiff claimed title under an execution sale. The defense was a general denial. On the trial below the plaintiff claimed that the property described in the complaint was formerly the property of the United States Stamping Company, a corporation organized under the laws of the state of New York, carrying on business in Portland, Conn.; that in November, 1888, one Samuel H. Smith brought a suit against said stamping company in the superior court for Middlesex county in that state, and attached therein said property in Portland as the property of said corporation; that afterwards, on February, 1891, judgment by default was rendered in said suit in favor of Smith for $30,000; that upon said judgment an execution was levied upon the attached property in March, 1891; and that in April, 1891, said property was duly sold under said execution to the plaintiff. The evidence offered by the plaintiff in support of these claims was mostly documentary. One of the important questions in the case was whether the United States Stamping Company, at the time of the attachment or the levy and sale aforesaid, owned or had any interest in the personal property described in the complaint; and to prove that it had, the plaintiff, among other matters, put in evidence the fact that the said corporation in July, 1887, made and delivered a chattel mortgage of said property to August Pottier to secure an indebtedness from it to him of nearly $60,000. This was substantially all the evidence offered by the plaintiff on this point in the case. After the plaintiff had rested his case the defendant moved for judgment as in case of non-suit, one of the grounds of which was "that the evidence did not show *prima facie* that the stamping company owned or had any

interest in the property at the time of the attachment or levy and sale under which the plaintiff claimed." The court below rendered judgment as of nonsuit, and refused the motion made for that purpose to set it aside, and the plaintiff appealed to the Supreme Court of Errors. The court said:

"The first question is whether the plaintiff's evidence fairly tends to show that the stamping company owned the property at the time in question. As before stated, the plaintiff's case upon this point of it rests chiefly upon the evidence relating to the execution and delivery of the chattel mortgage. We think it must be conceded that the evidence upon this point, if it stood alone and uncontradicted, does fairly tend to prove that the stamping company was the owner of the property in July, 1887; and in the absence of anything to the contrary, the presumption would be that this ownership continued up to the time of the attachment and the levy of the execution."

Accordingly, we hold in this case, that, as the mortgage is fair on its face, that, of itself, fairly tends to prove that at the time of its execution Martin Schmitt was the owner of the property described therein and that he had a right to mortgage the same.

It follows that the court did not err in directing a verdict for the plaintiff, and that the judgment of the lower court must be affirmed.

Williams, C. J., and Dunn and Kane, JJ., concur; Hays, J., dissents in part.