James G. RODGERS and Betty
J. Rodgers, Appellants,

v.

James R. HIGGINS, M.D.; Cardiology of
Tulsa, Inc.; John R. Hood, M.D.; Gas-
troenterology Specialists, Inc., an Okla-
homa Corporation, Appellees,

and

Saint Francis Hospital, an Oklahoma
Corporation, Defendant.

No. 79,454.

Supreme Court of Oklahoma.

April 14, 1993.

As Corrected April 28, 1993.

Rehearing Dismissed April 15, 1994.

**400**

W.C. Sellers, Jr., W.C. "Bill" Sellers, Inc., Sapulpa, for appellants.

Joseph M. Best, Joseph A. Sharp, John H.T. Sullivan, Daniel S. Sullivan, Kevin L. Ward, Karen M. Grundy, Best, Sharp, Holden, Sheridan & Stritzke, Tulsa, for appellees.

OPALA, Justice.

The single issue for our decision is whether the general unreserved jury verdict in this common-law action became the "filed judgment" in the § 990A [12 O.S.1991] sense by operation of 12 O.S.1991 § 696.1[1] [§ 696.1]. *We answer in the affirmative and dismiss the appeal as untimely.*

## THE ANATOMY OF LITIGATION

James G. Rodgers [Rodgers] brought a common-law claim against two physicians and their employers [doctors or defendants][2] for bodily injury caused by a tainted blood transfusion, from which he contracted "Type C" hepatitis,[3] a fatal disease. Although in support of his *single* claim[4] Rodgers urged *several* alternative theories of recovery, the trial court confined the case on submission to but one of them—that of negligence. Rodgers' wife sued for loss of consortium. Her claim was derivative of that pressed by the husband.[5] Both claims went to the same jury concurrently. Its verdict in favor of *all* the defendants[6]—accepted below without judicial reservation[7]—was received by the

---

1. See Part II for the text explaining that the clerk's *entry of judgment in a common-law action on a general unreserved jury verdict transmutes the verdict by operation of law into the "filed judgment"* in the § 990A [12 O.S.1991] sense. 12 O.S.1991 § 696.1; *Jaco Production Company v. Luca*, Okl., 823 P.2d 364 (1992). The pertinent text of § 990A is set out *infra* note 29. The terms of 12 O.S.1991 § 696.1 provide:

   "When a *trial by jury* has been had, *judgment must be entered by the clerk in conformity to the verdict*, unless it is *special*, or the court order the case to be *reserved* for future argument or consideration." [Emphasis provided.]

2. The Rodgers also sued Saint Francis Hospital, which was dismissed from the case before trial and is not a party to this appeal.

3. "Type C" hepatitis is also called "non-A/non-B hepatitis."

4. The February 26, 1992 pretrial order lists plaintiff's *grounds for recovery* as:

"a. Warranty
.b. Fraud and Misrepresentation
c. Failure to obtain informed consent
d. Corporate liability."

5. "Loss of consortium" means loss of society, affection, assistance and conjugal fellowship. BLACK'S LAW DICTIONARY 280 (5th ed. 1979).

6. The trial court instructed the jury that a verdict against Dr. Higgins or against Dr. Hood would be a decision against their respective employers, Cardiology of Tulsa, Inc. or Gastroenterology Specialists, Inc.

7. "Unreserved acceptance" *follows* the trial court's *failure to reserve judgment* on a general jury verdict. It is the *first step* in the statutory process by which a jury verdict is transmuted into a judgment by force of § 696.1. The process stands completed when the clerk *files the verdict as the court's judgment* and *enters it in the record*

clerk on March 6, 1992 and became the "filed judgment" by operation of § 696.1.[8] A *memorialization* of proceedings that led to the verdict, including the trial court's presubmission ruling which confined the plaintiffs' claims to the single theory of negligence, was incorporated in a journal entry filed March 26, 1992.[9] The Rodgers' petition in error came here on April 17, 1992, *less* than thirty days *after* the March 26 *journal entry's* filing, but *more* than thirty days *after* the clerk's March 6 record entry of judgment in conformity with the verdict. *The appeal is hence fraught with a fatal jurisdictional infirmity.*

## I

## THE GENERAL UNRESERVED JURY VERDICT, RATHER THAN THE TRIAL COURT'S PRESUBMISSION RULING ON THE APPLICABLE THEORY OF RECOVERY, DISPOSED OF THE RODGERS' CLAIMS

The doctors seek this appeal's dismissal for untimeliness. They urge us to apply the teachings of *Jaco Production Company v. Luca*,[10] which holds that a judicially unreserved general verdict—*entered* by the clerk in a common-law action—becomes transmuted into *a filed* judgment *eo instante* by force of 12 O.S.1991 § 696.1.[11]

The Rodgers argue the verdict did not *resolve all the issues* because the district court had "*sustained defendants' demurrer to the evidence*" on some of the "*claims*." They would have us treat each of their multiple alternative *theories of recovery* as a *distinct cause of action* (or as a *separable claim*).[12] According to the Rodgers, no judgment was entered until the trial court memorialized both the jury's verdict and its presubmission ruling in the single journal entry of March 26, 1992.[13]

■ Oklahoma jurisprudence utilizes the transactional approach for its definition of a "cause of action."[14] Although different theo-

---

*proper. For a full explanation, see* Part II and Appendix showing the succeeding steps.

**8.** For the terms of § 696.1, *see supra* note 1.

**9.** The *March 26, 1992 entry* provides in pertinent part:

"... On March 6th, Plaintiffs completed their evidence and rested and the Defendants interposed *demurrers* on the *warranty claim* which was *sustained;* on the *fraud and misrepresentation claim* which was *sustained;* on the *consortium claim* which was *overruled;* and the *informed consent claim* which was *overruled.* The Defendants proceeded to put on evidence and rested on March 6th. There being no rebuttal, the Court instructed the jury and closing arguments were made by both sides. After due deliberation, the jury returned into open court with their ten (10) person verdict signed by ten (10) jurors. The Court examined the verdict forms as well as the attorneys [sic] and there being no request to poll the jury, the Court *reviewed and accepted the verdict in favor of the Defendants.*
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that Defendants, James R. Higgins, M.D., Cardiology of Tulsa, Inc., John R. Hood, M.D., and Gastroenterology Specialists, Inc., have judgment in their favor and against the Plaintiffs, James G. Rodgers and Betty J. Rodgers, and for the Defendants statutory taxable costs herein expended...." [Emphasis provided.]

**10.** *Jaco, supra* note 1 at 364.

**11.** For the terms of § 696.1, *see supra* note 1.

**12.** The Rodgers have cast the trial court's midtrial ruling in terms of an order sustaining a "demurrer" on the "warranty *claim* " and on the "fraud and misrepresentation *claim.*" They state that "the Court directed a verdict on the issue of warranty" and that appellants did not get a jury trial on *"three of their causes of action."* The Rodgers not only confuse a theory of recovery with a "cause of action," they also intermix the trial court's failure to instruct the jury on an alternative liability theory with its "direction of a verdict." *The record shows that the trial court did not direct a verdict in any defendant's favor. Rather, it let the jury decide whether the defendants were negligent, but withheld from the triers consideration of the theories deemed unsupported by the plaintiffs' proof. See infra* note 24.

**13.** For the terms of the March 26 entry, *see supra* note 9.

**14.** *When a claim for damages arises from one occurrence or transaction, it affords the plaintiff but a single cause of action. See Eason Oil Co. v. Howard Engineering,* Okl., 755 P.2d 669, 672 n. 13 (1988); *Chandler v. Denton,* Okl., 741 P.2d

ries of liability may be pressed in support of each claim, only a single cause of action can ordinarily be predicated upon one occurrence or transaction.[15] *The single offending event that Rodgers (husband) complains of is the pathogenic blood transfusion.* His evidence shows that when he was hospitalized for a colonoscopy, Dr. Hood recommended a pre-procedure blood transfusion. According to Rodgers, when he objected and questioned its necessity, Dr. Hood told him the physicians would try to do without it. Later, a nurse brought the blood and told him Dr. Higgins had ordered it. Rodgers told Dr. Higgins that (1) he was concerned about the blood and (2) his brother in Arkansas, who had the same blood type, could be summoned at once to donate the needed quantity. Rodgers testified that Dr. Higgins (1) assured him it was not necessary for his brother to donate blood, (2) repeated the "just-don't-worry-about-it" phrase three or four times and (3) told him "everything will be fine." Although Rodgers' signature appears on a consent form for authorizing the transfusion, he does not remember signing it. A few months after the procedure he began to exhibit symptoms of a liver disease later diagnosed as hepatitis.

■ At pretrial Rodgers identified *what he called* his "claims" or "causes of action" as: (1) fraud and misrepresentation, (2) breach of warranty and (3) execution of a blood transfusion without his informed consent.[16] In law *all of his asserted grounds constitute nothing more than three distinct and alternative theories of recovery.*[17] Defendants "demurred" to the evidence at the close of the case; they contended the proof was insufficient to support *any claim against them,* especially one founded on breach of warranty or on fraud and misrepresentation. The trial court ruled the facts warranted the claim's submission on a want-of-due-care theory of the plaintiffs' allegations that (a) the doctors did not completely and accurately inform Rodgers about the risks from the blood transfusion, (b) as a result of their *omission* he *withdrew his objection* to the procedure's execution and (c) later suffered bodily injury. In short, the *critical nisi prius* mid-trial ruling *withheld from submission* two of the *three theories tendered* by the plaintiffs: (1) breach of warranty and (2) fraud and misrepresentation.[18]

■ A plaintiff who states a claim and proves its facts is entitled to any relief affordable by law;[19] the pleader need not correctly identify any applicable theory of recovery.[20] The trial court must charge the jury on all the legal *issues the evidence tenders.*[21] In this case, the trial court ruled the evidence called for instructions on the theory of negligence and on the wife's loss of consortium. *Plaintiffs'-pressed submission of the claim on other theories was rejected as unwarranted by their proof.*

855, 862–863 (1987); *Reams v. Tulsa Cable Television, Inc.,* Okl., 604 P.2d 373, 374–376 (1979); *Retherford v. Halliburton Co.,* Okl., 572 P.2d 966, 968–969 (1978).

**15.** *See in this connection Silver v. Slusher,* Okl., 770 P.2d 878, 882 n. 11 (1989), *cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989). *See supra* note 4 for Rodgers' theories of recovery.

**16.** For the Rodgers' arguments, *see supra* note 12.

**17.** *See Holbert v. Echeverria,* Okl., 744 P.2d 960, 962 (1987), where the plaintiff separately pleaded *"claims"* for (1) breach of contract, (2) fraud and misrepresentation and (3) violation of the Consumer Protection Act. We there recognized these *"claims"* as *but three distinct and alternative theories of recovery rather than as separate causes of action. This mischaracterization of theories as claims is also true here. See also Chandler, supra* note 14, 741 P.2d at 862–863, where, in applying the savings statute, 12 O.S.1991 § 100, we distinguished a "cause of action" from a "theory of recovery."

**18.** In his presubmission ruling the *nisi prius* judge recognized that he was dealing with *theories of recovery rather than with separate claims;* he initially stated, "[a]s to the *legal theory of recovery* based on informed consent [negligence], I think there's an issue of fact ..." and then lapsed into the parties' terminology by saying that he would "sustain the demurrers" with respect to a "cause of action" for breach of warranty, fraud and misrepresentation. [Emphasis provided.]

**19.** *Chandler, supra* note 14, 741 P.2d at 862 n. 13; *Doss Oil Royalty Co. v. Texas Co.,* 192 Okl. 359, 137 P.2d 934, 939 (1943).

**20.** *Silver, supra* note 15, 770 P.2d at 881; *Doss, supra* note 19, 137 P.2d at 939.

**21.** *Bradley Chevrolet, Inc. v. Goodson,* Okl., 450 P.2d 500, 502 (1969); *Vogel v. Rushing,* 202 Okl. 277, 212 P.2d 665, 667 (1949).

■ *Nisi prius refusal* to instruct the jury on *alternative theories of recovery* is distinguishable from *an order that sustains a demurrer to the evidence in support of a cause of action or of a claim.* If the trial court's presubmission ruling had (1) withheld either Rodgers' or his wife's claim in its entirety or (2) severed from jury trial claims against some of the four defendants, the general verdict might *not* have been dispositive of *all* the issues in this common-law action.[22] An adjudication of *all multiple claims* and the settlement of *the rights and liabilities of all the parties to those claims* is a *sine qua non* of an *appealable event* unless there be "an [earlier] express [judicial] determination that there is no just reason for delay [of an appeal]" and "an express direction for the [immediate] filing of judgment."[23] *The verdict in this case did not leave any issue or claim undecided.*

When the trial of this case began (1) Rodgers had but *one claim ex delicto* for damages against four defendants, all answerable jointly and severally and (2) his wife had a single claim against the same four parties for her loss of consortium. *Both of the Rodgers' claims went to the jury against all of the four defendants in the case.*[24] *Its verdict favors all the defendants.* In short, the only demands the Rodgers ever had—one claim by each of them—were *finally* disposed of by the *single jury verdict.*

■ The district court's mid-trial ruling does *not* represent an order appealable *before judgment; nor* does it leave *post-verdict issues* to be resolved. *Had this case been timely appealed, any error in withholding from the jury's consideration the rejected plaintiffs' theories of fraud and breach of warranty, if properly preserved, clearly would have been reviewable on appeal from the judgment entered by force of § 696.1 upon the general unreserved jury verdict.*[25]

## II

### A

APPEAL TIME IN A COMMON–LAW ACTION IS TRIGGERED BY THE TRIAL COURT'S UNRESERVED ACCEPTANCE[26] OF A GENERAL JURY VERDICT AND THE CLERK'S ENTRY OF JUDGMENT INTO THE RECORD PROPER, WHICH TASK IS NECESSARILY PRECEDED BY FILING

"A judgment is the *final determination* of the rights of the parties in an action."[27]

---

22. Issues pressed in *multiple interrelated claims* or *involving multiple parties* cannot be deemed *"finally"* decided until *all* of the issues stand resolved. The terms of 12 O.S.1991 § 1006 provide:

"When *more than one claim for relief* is presented in an action ... or *when multiple parties are involved,* the court may direct the preparation and filing of a final judgment as to one or more but *fewer than all of the claims or parties only upon an express determination that there is no just reason for delay* and upon an express direction for the filing of judgment. In the *absence* of such *determination* and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is *subject to revision at any time before the judgment adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk."* [Emphasis provided.]

23. *See* 12 O.S.1991 § 1006, *supra* note 22.

24. Rodgers urges that "the court erred in directing a verdict in favor of Defendants James R.

Higgins, M.D. and Cardiology of Tulsa, Inc., at the close of Plaintiff's evidence, on the issue of express warranty." Although the breach of warranty theory may have been asserted only against Dr. Higgins and his employer, *the case went to the jury on a negligence theory against all four defendants—i.e., the trial judge did not direct a verdict against any of the defendants. He merely ruled that the proof adduced in the case did not warrant its submission to the jury on the two withheld theories of recovery.*

25. A trial court's ruling that withholds from submission grounds of recovery deemed legally inapplicable or unsupported by the proof is not appealable as "final," but *if preserved as error, may be reviewed* in an appeal from the judgment in the case or from postjudgment denial of a timely new trial motion. *Schepp v. Hess,* Okl., 770 P.2d 34, 36 n. 2 (1989).

26. For the definition of *"unreserved acceptance,"* see *supra* note 7.

27. *See* 12 O.S.1991 § 681.

*Specific statutory provisions control the process of transforming a general unreserved jury verdict in a common-law action into a judgment.* The terms of § 696.1 provide: "When a *trial by jury* has been had, *judgment must be entered by the clerk in conformity to the verdict,* unless it is *special,* or the court order the case to be *reserved* for future argument or consideration." [Emphasis provided.]

■■■ Recent case law[28] unequivocally teaches that *under the provisions of 12 O.S. 1991 § 990A*[29] [§ 990A], read together with the specific terms of § 696.1, appeal time in common-law[30] actions decided by a general verdict is triggered by (1) the judge's failure to "reserve" (withhold) judgment and (2) the clerk's entry of judgment into the record proper[31]—an entry which is necessarily preceded by the verdict's *filing.* These acts transmute the verdict by force of § 696.1 into the legal equivalent of a filed judgment in the § 990A sense.[32] The prevailing party is hence entitled to entry of judgment in his favor the day the jury verdict is returned and accepted without reservation.[33]

■■■ The dissenters must concede *not only* that *the judgment* on a general unreserved jury verdict is *rendered by operation of law,* but also that *under § 696.1* the judgment must be *at once entered by the clerk without judicial imprimatur.* Yet, after a vain search for uniformity that would supply

28. *Jaco, supra* note 1; *McGinnis v. Republic–Underwriters Insurance Company,* Okl., 830 P.2d 191 (1992); *Peabody v. Gem Homes, Inc.,* No. 79,358 (unpublished order of June 9, 1992); *The Bank of Woodward v. Johnston,* No. 79,120 (unpublished order of June 22, 1992); *Moss v. Davis,* No. 79,503 (unpublished order of July 13, 1992); *Manning v. Coats,* No. 80,055 (unpublished order of Oct. 12, 1992); *The Antiquary v. Grady Kelley,* No. 79,220 (unpublished order of Oct. 26, 1992); *Lee v. Knight,* No. 79,781 (unpublished order of December 14, 1992); *Brown v. The Firestone Tire & Rubber Co.,* No. 79,598 (unpublished order of January 11, 1993); *Day v. Muetzel d/b/a C & G Laundry,* No. 80,088 (unpublished order of Jan. 25, 1993); *Shade v. Chanie,* No. 80,408 (unpublished order of Feb. 1, 1993).

29. The terms of 12 O.S.1991 § 990A provide in pertinent part:

"A. An appeal to the Supreme Court may be commenced by filing a petition in error with the Clerk of the Supreme Court *within thirty (30) days from the date the final order or judgment is filed....*" [Emphasis provided.]

30. Art. 2, § 19, Okl. Const., *preserves inviolate* the right to trial by jury, according to *the course of common law.* The dichotomous division of our decision-making regime into "law" and "equity" process is constitutionally mandated rather than artificially spawned by this case. One of the dissents is simply incorrect in suggesting that the law/equity dichotomy is not sanctioned by our fundamental law.

31. The terms of 12 O.S.1991 § 32.1 provide in pertinent part:

"The record shall be made up from the petition, the process, return, the pleadings subsequent thereto, reports, *verdicts,* orders, judgments, and all material acts and proceedings of the court...." [Emphasis provided.]

Within the meaning of § 32.1 entry of judgment in the § 696.1 sense means *inclusion of the general unreserved jury verdict in the court's "record proper,"* a term which is synonymous with *"common-law record"* and *"judgment roll."* See *Messenger v. Messenger,* Okl., 827 P.2d 865, 870 n. 20 (1992); *Veiser v. Armstrong,* Okl., 688 P.2d 796, 800 n. 10 (1984); *Mid–Continent Pipe Line Co. v. Seminole County Excise Bd.,* 194 Okl. 40, 146 P.2d 996, 1000 (1944).

The judgment roll's *statutory* definition has remained the same for over 100 years. For an extensive discussion of the judgment roll, its history, and its elements, *see* A. FREEMAN, A TREATISE OF THE LAW OF JUDGMENTS §§ 175–193 (5th ed. 1925).

32. Section 696.1 provides a *mechanism to keep the general verdict from becoming a judgment* if there be unresolved legal questions. *Transmutation of verdict into judgment cannot be prevented by judicial silence; it can be done only by an affirmative act of the judge who explicitly reserves (withholds) the verdict's immediate entry as a judgment.* For the terms of § 696.1, *see supra* note 1.

33. This meaning of § 696.1 is in complete accord with federal jurisprudence that construes Fed. R.Civ.P. 58. *See Burney v. Intermare K.G.,* 717 F.Supp. 793, 798 (M.D.Fla.1988), *aff'd.,* 886 F.2d 1323 (11th Cir.1989). With the enactment of Rule 58, Congress chose an approach *similar to* that adopted in § 696.1 *to enable the clerk to enter judgment upon a general jury verdict without specific direction from the court.* Under federal procedure the judgment must be set forth on a separate document which is prepared by the *clerk* rather than by the *court* or by the *parties. Federal law—much like our § 696.1—is "designed to encourage all reasonable speed in formulating and entering the judgment when the case has been decided." See* the Advisory Committee's Note to the 1963 Amendment of Rule 58, 31 F.R.D. 649, 650 (1962).

an identical time trigger for three distinct case-deciding mechanisms, the dissents succeed *only* in abandoning *fidelity to the legislative history of § 696.1 and to that statute's text* by making the clerk's entry of judgment (which presupposes its filing) *ineffective to trigger appeal time until a judge-signed journal entry is placed of record.* By sheer judicial fiat the dissents would resurrect a scheme the legislature threw out when it repealed the Judgments and Appeals Act passed in 1990 (effective January 1, 1991).[34] The provisions of the *repealed* § 1001A[35] required a separate document for every judgment and those of § 1001C[36] *mandated the trial court to prepare and sign the judgment after a general verdict and then deliver it to the court clerk for filing.* The legislature clearly *eliminated* those two requirements when it reenacted the then-defunct § 696 as § 696.1.[37] It is this very reenactment that revived the pre–1991 procedural regime for entry of judgments in common-law actions decided by a general unreserved jury verdict.

*That regime unequivocally commanded, as it does today, that judgment on these verdicts be entered without judicial intervention.*[38] The resurrected § 696 makes judges powerless to *change a general unreserved verdict*[39] except by vacation[40] and new trial process.[41]

**B**

**WHEN THE LEGISLATURE *REENACTED* § 696 as § 696.1 AND ADOPTED § 990A,[42] IT KNEW THE JUDICIAL GLOSS THAT HAD BEEN CAST UPON UNRESERVED ACCEPTANCE OF A GENERAL JURY VERDICT AND UPON A CLERK'S MANDATORY DUTY TO ENTER MATTERS OF RECORD WITHOUT JUDICIAL IMPRIMATUR**

When the legislature restores verbatim previously enacted statutes, it is pre-

34. A "new" Judgments and Appeals Act, which went into effect on January 1, 1991, was repealed on June 1, 1991. Okla.Sess.Laws 1991, c. 251, § 22, eff. June 1, 1991. The short-lived Act had repealed, *inter alia*, §§ 696 and 697. *See* Okla.Sess.Laws 1990, c. 251, § 20, eff. Jan. 1, 1991. In 1991 the cited sections were reinstated in their entirety as §§ 696.1 and 697.1. Okla. Sess.Laws 1991, c. 251, §§ 6 and 7, eff. June 1, 1991.

35. The terms of 12 O.S.Supp.1990 § 1001 A (repealed by Okla.Sess.Laws 1991, c. 251, § 22, eff. June 1, 1991) were:
"Every judgment shall be set forth on a separate document. * * *"

36. The pertinent terms of 12 O.S.Supp.1990 § 1001 C (repealed by Okla.Sess.Laws 1991, c. 251, § 22, eff. June 1, 1991) were:
"The trial court shall promptly prepare and sign the judgment and deliver it to the court clerk for filing after a general verdict of a jury.... The forms in subsection E of this section shall be used in preparing the judgment." [Emphasis provided.]

37. Section 696 is a *time-tested rule* adopted at statehood from the New York Field Code of 1848.

38. *At common law judgment did not immediately follow rendition of a verdict.* A central court sitting *en banc* at Westminster [King's Bench, Common Pleas or the Exchequer] would *order* judgment to be entered on a verdict. J. Koffler and A. Reppy, HANDBOOK OF COMMON LAW PLEADING § 303, 565–566 (1969). For an explanation of

the *nisi prius* system, *see* Sir Matthew Hale, THE HISTORY OF THE COMMON LAW OF ENGLAND 166 (the University of Chicago Press 1971) and Sir William Searle Holdsworth, A HISTORY OF ENGLISH LAW 278, 282 (7th ed. 1966); *see also* L.B. Curzon, English Legal History 172 (1968).

Our legislature *abrogated* at statehood the pre-existing common law by allowing general unreserved *verdicts* to become *transmuted into judgments by force of law* and *without judicial intervention.* Oklahoma's early *repudiation* of the common-law practice that required judicial imprimatur for verdicts is in full force today. The § 696.1 command was recently applied in *Jaco, supra* note 1. For other extant jurisprudence, *see supra* note 28.

39. *"There is no principle of law more firmly established than that the judgment must follow and conform to the [general] verdict [in a common-law action]."* Smith v. Eagle Mfg. Co., 25 Okl. 404, 108 P. 626, 627 (1910).

40. *See* 12 O.S.1991 § 1031.1, *infra* note 82; 12 O.S.1991 §§ 1031 *et seq.*

41. *See* 12 O.S.1991 § 651; *see also* 12 O.S.1991 § 698, *infra* note 79.

42. The terms of §§ 696.1 and 990A both became effective June 1, 1991. The provisions of § 696.1 follow *verbatim* those in former § 696. *The section's language is exactly the same today as it was at statehood.*

sumed to be familiar with and to adopt their extant case-law construction.[43] The judicial gloss that had been cast upon unreserved acceptance of a general verdict is that *judgment must follow the verdict by force of law, even though it might not have been memorialized and entered on the court's journal.*[44] That lore was well known to the § 696 revivers.

The adoption of an amendatory act indicates legislative intent to change the law then in force.[45] The legislature could easily have retained the § 1001 requirements that every judgment be contained in a separate document[46] and that *a judge-signed memorialization* be filed after a general jury verdict,[47] if this procedure was indeed meant to be essential for triggering appeal time. If a journal entry was to be a *sine qua non,* the legislature would not have *repealed* those requirements nor *reenacted § 696's command for the clerk's entry of judgment.*[48] *Jaco,* decided after § 696's *restoration* as § 696.1, remains true to our extant jurisprudence declaring that a filed general unreserved jury verdict becomes the court's judgment *without judicial intervention. Section 696.1 represents a restored right of the pre-* vailing party. It is too valuable to suffer abrogation by judicial fiat.

*Walker v. St. Louis–San Francisco Ry. Co.*[49] does not hold, as one dissent seems to counsel, that judicial action is required to effect judgment after a general unreserved jury verdict has been accepted. *Rather, Walker* teaches that a judge has authority to *add prejudgment interest to a jury verdict where applicable.*[50] *Walker* is *not* inconsistent with *Jaco's teaching* that *appeal time in a common-law action runs from the clerk's entry of judgment upon the general unreserved verdict.*

The legislature must be charged with knowledge that matters *to be "entered by the clerk"* are to be *incorporated into the "record proper" in the § 32.1 sense*[51] and that filing *must* precede entry.[52] Before 1969, when notice of appeal was a prerequisite for appellate review,[53] the court clerk had a *mandatory duty to "enter notice of appeal"* and *there was no requirement that notice of intention to appeal be contained in any journal entry.*[54] The clerk's *"duty of entry"* was held accomplished by incorporating the notice into the record proper[55]—*i.e.,*

---

**43.** *Horath v. Pierce,* Okl., 506 P.2d 548, 553–554 (1973). Our canons of statutory construction are in accord with national jurisprudence. 1A SUTHERLAND STATUTORY CONSTRUCTION § 22.33 (1985 Revision, 4th ed.), citing *In re Swartz's Estate,* 162 Misc. 46, 294 N.Y.S. 896, 902 (1937).

**44.** *See Austin v. King,* Okl., 404 P.2d 1009, 1014 (1965); *Peoples Electric Co–Op. v. Broughton,* 191 Okl. 229, 127 P.2d 850, 853 (1942); *Arkansas- Louisiana Gas Company v. McBroom,* 526 P.2d 509, 512 (Okl.App.1974) (approved for publication Sept. 12, 1974); *Grzys v. Connecticut Co.,* 123 Conn. 605, 198 A. 259, 261 (1938).

**45.** *Letteer v. Conservancy District No. 30,* Okl., 385 P.2d 796, 800–801 (1963); *Tom P. McDemott, Inc. v. Bennett,* Okl., 395 P.2d 566, 569–70 (1964). National jurisprudence is in accord. *See* SUTHERLAND, *supra* note 43 at § 22.30, citing *City of Stamford v. Town of Stamford,* 107 Conn. 596, 141 A. 891, 894–95 (1928).

**46.** For the pertinent terms of the repealed § 1001A, *see supra* note 35.

**47.** For the pertinent terms of the repealed § 1001C, *see supra* note 36.

**48.** *See* § 696.1, *supra* note 1.

**49.** Okl., 671 P.2d 672, 673–74 (1983).

**50.** A verdict that leaves nothing for the judge to do but simple arithmetic is a general verdict governed by § 696.1. *Gizzi, infra* note 69, 564 P.2d at 1013.

**51.** *Austin, supra* note 44, 404 P.2d at 1014; *Little v. Employer's Casualty Co.,* 180 Okl. 628, 71 P.2d 687, 688 (1937); *Callander v. Hopkins,* 97 Okl. 41, 222 P. 672, 673 (1924).

**52.** For the explanation that *entry presupposes filing, see infra* this part.

**53.** Notice of intent to appeal could be given in open court *after* rendition of judgment or in writing within ten days of that event. *See* 12 O.S.1961 § 954 (repealed by Okla.Sess.Laws 1968, c. 290, § 4, eff. Jan. 13, 1969).

**54.** *Little, supra* note 51, 71 P.2d at 688.

**55.** *See* 12 O.S.1991 § 696.1; *Jaco, supra* note 1, 823 P.2d at 364.

*by making it a part of the judgment roll.*[56] *Contrary to a dissent's suggestion, record entry of judgment is never effected by a clerk's minute posted on the appearance docket.*[57] *Entry is accomplished by the clerk's incorporation of the verdict into the judgment roll*[58]*—a purely ministerial act which by force of § 696.1 transmutes the verdict into a filed judgment.*

**56.** *Callander, supra,* 222 P. at 673 note 51; *Little, supra,* 71 P.2d at 688 note 51.

**57.** *McCullough v. Safeway Stores, Inc.,* Okl., 626 P.2d 1332, 1335 (1981). The appearance docket is not a part of the court's *judgment roll.* The latter is the court's only *official memorial* and the only medium through which it speaks. *Elliott v. City of Guthrie,* Okl., 725 P.2d 861, 863 (1986). The appearance docket is nothing more or less than a *chronological index* of filings and an abstract of significant courtroom events in a case. *See* 12 O.S.1991 § 23, the terms of which provide in pertinent part:

> "On the appearance docket [the clerk] shall enter all actions in the order in which they are brought ... [including] an *abstract of all judgments and orders of the court. An abstract shall contain a very brief description of the order or judgment rendered....*" [Emphasis provided.]

**58.** At common law the "judgment roll" was a roll of parchment upon which the critical stages of court proceedings would be entered. On an action's termination the roll was deposited *in perpetuam rei memoriam* (in perpetual memory). After paper replaced parchment as a universal writing medium, the roll fell into disuse, but the term was carried over to describe the content of the *court's permanent record required to be kept by the clerk. 12 O.S.1991 § 32.1; Pettis v. Johnston,* 78 Okl. 277, 190 P. 681, 700 (1920).

**59.** *None* of the cases cited in the *dissents* teach that *"filing"* and *"entering"* are *mutually exclusive and inconsistent acts.*

**60.** The terms of 25 O.S.1991 § 2 provide in pertinent part that "[w]henever the meaning of a word or phrase is defined in any statute, *such definition is applicable to the same word or phrase wherever it occurs....*" [Emphasis provided.] We must hence give the word *"entry"* in § 696.1 the same meaning as that which it has been given in 12 O.S.1991 § 24, *infra* note 63. The latter requires that certain instruments *already "on file"* be *"entered."*

**61.** *See Nat. Bank v. Lowenstein,* 52 Okl. 259, 155 P. 1127, 1129 (1915), citing *Covington v. Fisher,* 22 Okl. 207, 97 P. 615, 617 (1908).

Although "filing" and "entry" are *not synonymous,* the two concepts are closely interwoven.[59] *The clerk may "enter" only that which is already "on file."*[60] *Filing of the judgment* simply refers to its *delivery to the clerk* for *entry* and preservation.[61] *Every document's entry is preceded by its filing—*whether the entry be made (1) on a docket,[62] (2) on the court's journal,[63] or (3) into the

**62.** The terms of 12 O.S.1991 § 22 provide that *"the clerk of the district court shall keep* an *appearance docket,* a *trial docket,* a *journal,* a *judgment docket* and such *other records* as may be ordered by the court *or required by law."* [Emphasis provided.]

The court clerk is *no longer required* to keep an *execution docket and a lien journal. See* 12 O.S. 1981 § 26 (repealed by Okla.Sess.Laws 1988, c. 102, § 3, eff. Nov. 1, 1988) and 42 O.S.1971 § 142, which was amended in 1977. The clerk's § 142 duty to keep a mechanic's lien journal was transferred to the county clerk by 42 O.S.Supp. 1977 § 141.1 (added by Okla.Sess.Laws 1977, c. 207, § 3, eff. Oct. 1, 1977).

**63.** At one time failure to enter a judgment upon the court's *journal* affected its validity. The terms of 12 O.S.1961 § 701 (repealed by Okla. Sess.Laws 1971, c. 245 § 3, eff. Oct. 1, 1971) and its predecessors *then* provided that "[a]ll judgments and orders must be entered on the journal of the court...." *A judgment signed by the judge and contained in the files of the clerk, but not entered on the journal, as required by § 701, was not a valid judgment except between the parties. Cockrell v. Schmitt,* 20 Okl. 207, 94 P. 521, 523 (1908); *Ex parte Stevenson,* 20 Okl. 549, 94 P. 1071, 1072 (1908).

*Justice Jackson, writing in 1970, freed us from the requirement of proving a judgment by its entry on the journal. Cumby v. State Ex Rel. Vinzant,* Okl., 468 P.2d 490, 493 (1970). Later, § 701's requirements were incorporated into 12 O.S. 1971 § 24, the terms of which are identical to those presently in 12 O.S.1991 § 24. The terms of § 24 provide in pertinent part:

> "*Upon the journal record* required to be kept by the clerk of the district court in civil cases ... shall be *entered* copies of the following documents *on file:*
>
> \* \* \* \*
>
> 2. All instruments *filed in the case* that *bear the signature of the judge* and specify clearly the relief granted or order made." [Emphasis provided.]

*Implicit in Vinzant and in § 24 is the notion that no judgment can be entered on the journal unless it has first been filed in the case.* The same reasoning firmly supports the conclusion that a judgment may be neither incorporated into the judgment roll nor posted on the appearance docket until it has *first been filed in the case.*

judgment roll.[64] *In short, each "entry" presupposes an earlier "filing."*

In sum, § 696.1 commands that, upon a general verdict's acceptance without reservation, the clerk must *file the verdict in the case* and *enter it* in the judgment roll. *This the clerk did in the case before us.* The law does not require that a verdict meeting § 696.1 standards be contained in a judge-signed journal entry *before* its transmutation into judgment.[65] *We should not read into the law that which is not there.*

## C

### THE MEANING *JACO* PLACES ON § 696.1 GIVES FORCE AND EFFECT TO RELATED STATUTES AS WELL; IT IS CONSISTENT WITH THE PRINCIPLE THAT THE LEGISLATURE IS NEVER PRESUMED TO DO A VAIN AND USELESS ACT

The relevant portions of § 696.1 as well as all enactments on related matters must be considered together to give force and effect to *all of them.*[66] The legislature is never presumed to do a vain and useless

act.[67] The meaning placed by *Jaco* on § 696.1 is consistent with the *irrefutable legal verity* that today's procedural regime treats general jury verdicts[68] differently from those that are special or advisory[69] (or those which are ordered "reserved" by the court).[70] For the former class, judgment *de cursu*[71] (one entered by the clerk without judicial intervention) is the prescribed norm, while antecedent *judicial* action *via* a journal entry is required to effect a judgment in the latter instance.[72]

If we were to require a judge-signed journal entry for transformation of a general unreserved verdict into a "filed judgment," effect could not be given to the clear commands in *both* § 696.1 and § 697.1.[73] Rather, a general unreserved jury verdict would be treated exactly *the same* as special verdicts and those that have been reserved. In other words, the court would have to "order [the] judgment [to] be entered"[74] by a signed journal entry. As the dissents would have it, the legislature's return to the time-tested command of § 696 (now § 696.1) would be in vain and ignored. *Jaco must stand* if we are to give full force *both* to §§ 696.1 and 697.1 and to the legislature's most recent procedural design for triggering appeal time.[75]

**64.** For the explanation of judgment roll, *see supra* notes 31 and 62.

**65.** *Austin, supra* note 44, 404 P.2d at 1014; *Callander, supra* note 51, 222 P. at 673; *Little, supra* note 51, 71 P.2d at 688.

**66.** *Clifton v. Clifton*, Okl., 801 P.2d 693, 696 (1990); *Ledbetter v. Oklahoma Alcoholic Bev. Laws Enforcement*, Okl., 764 P.2d 172, 179 (1988).

**67.** *Farris v. Cannon*, Okl., 649 P.2d 529, 531 n. 4 (1982).

**68.** By the command of Art. 7, § 15, Okl. Const., "[i]n all jury trials the jury shall return a *general verdict*," but the court may in its discretion direct the jury to make *special findings*. [Emphasis provided.]

**69.** If the verdict is not wholly determinative of the recovery right, it is *special. An addition of special findings of fact will not rob a verdict of its attribute as a general verdict if the jury finds either in favor of the plaintiff or the defendant.* Art. 7

§ 15, Okl. Const.; *Smith v. Gizzi*, Okl., 564 P.2d 1009, 1013 (1977).

**70.** *Compare* 12 O.S.1991 § 696.1 with 12 O.S. 1991 § 697.1.

**71.** A literal translation of the Latin words *de cursu* is "of course." *See Chamberlin v. Chamberlin*, Okl., 720 P.2d 721, 726 n. 25 (1986). *In the context of § 696.1 "of course" means that in a common-law action judgment on a general unreserved jury verdict is entered summarily by the ministerial act of a clerk and without any antecedent judicial action or a party's request.*

**72.** The terms of 12 O.S.1991 § 697.1 provide: "Where the verdict is *special*, or where there has been *a special finding on particular questions of fact*, or where *the court has ordered the case to be reserved*, it shall *order what judgment shall be entered*." [Emphasis provided.]

**73.** For the terms of § 697.1, *see supra* note 72.

**74.** *See* § 697.1, *supra* note 72.

**75.** *See* § 990A, *supra* note 29.

## D

## THERE CAN BE *ONLY ONE JUDGMENT* UPON A SINGLE CAUSE OF ACTION;[76] TO AVOID AN ABSURD RESULT, THE JUDGMENT THE CLERK MUST ENTER WITHOUT JUDICIAL IMPRIMATUR UNDER THE COMMAND OF THE RESTORED § 696.1 MUST BE THE JUDGMENT *FOR ALL PURPOSES*

Section 696.1 must be construed in a reasonable and sensible manner that avoids an absurd result.[77] When, as here, a general unreserved jury verdict is returned on March 6, *judgment that is both executable and appealable* must be entered by the clerk at the same time. The winner at once becomes judgment creditor entitled to issue execution. If the loser—now judgment debtor—wants to appeal immediately, he must start counting to *thirty*. If the loser wants to stay execution or to postpone the appeal time's trigger, he must start counting to *ten*. This is so because a motion for new trial,[78] which suspends the running of appeal time, must be filed *within ten days after the verdict is rendered.*[79] *Counting from the verdict is clearly not a novel nor a unique concept in our law.*

The dissents' fears that *Jaco's* teachings will result in wholesale dismissal of appeals is unfounded. *Jaco's authority* applies only in a narrow subclass of cases, where the litigant defeated by a general unreserved jury verdict appeals directly from the judgment *without* first bringing a timely new trial motion.[80]

Absurdity would doubtless flow from the dissents' suggestion that only a judge-signed *memorialization* of the proceedings can trigger appeal time in this common-law action. Although there might be a tempting allure in the *illusion of uniformity* the dissents hope to bring about, we would be *robbed of the present law's conceptual symmetry* that makes *appeal time's commencement* coincide with the *time a judgment becomes executable* and also with the *temporal point at which postjudgment interest begins to run.* A general unreserved verdict that is transmuted into judgment by the command of § 696.1 becomes an executable judgment when the verdict is filed. It will support entry upon the judgment docket once a § 25.1 affidavit[81] is also filed. Were we to yield to the dissents and to their counsel, only lip service would be paid to the notion that there can be *only one judgment upon a single cause of action.* The dissents would *create several parallel tracks, each resulting in a judgment*

---

**76.** *F.D.I.C. v. Tidwell*, Okl., 820 P.2d 1338, 1341 (1991).

**77.** *Grand River Dam Authority v. State*, Okl., 645 P.2d 1011, 1019 (1982); *AMF Tubescope Company v. Hatchel*, Okl., 547 P.2d 374, 379 (1976).

**78.** The pertinent terms of 12 O.S.1991 § 653 are: "... [T]he application for a new trial, *if made*, must be filed *within ten (10) days after the verdict ... is rendered....*" [Emphasis provided.]

**79.** *Schepp, supra* note 25, 770 P.2d at 37 n. 9; *Salyer v. National Trailer Convoy, Inc.*, Okl., 727 P.2d 1361, 1363 n. 5 (1986).

**80.** The filing of a motion for new trial *extends appeal time*. The pertinent terms of 12 O.S.1991 § 991 are: "The right of a party to perfect an appeal from a judgment ... of the trial court to the Supreme Court shall *not* be conditioned upon his having filed in the trial court a motion for a new trial, but *in the event a motion for a new trial is filed* in the trial court by a party adversely affected by the judgment ... *no appeal to the Supreme Court may be taken until subse-*

*quent to the ruling by the trial court on the motion for a new trial. * * * "* [Emphasis provided.]
*See* authorities *supra* note 79.

**81.** The pertinent terms of 12 O.S.1991 § 25.1 are: "A. The judgment docket shall be kept in the form of an index ... and it shall be the duty of the clerk *immediately after the rendition of a judgment and the filing, by a party for whom judgment was rendered, of an affidavit of judgment ...* to enter on said judgment docket a statement containing the names of the parties, the amount and nature of the judgment and costs, and the date of its rendition and the date on which said judgment is entered on said judgment docket...." [Emphasis provided.]
Until flat fees for the clerk's services were introduced by the provisions of 28 O.S.1971 § 154, the clerk collected a *per-item fee for each service it performed*, including docketing the judgment and recording any instrument. *See* 28 O.S. 1961 § 31 (repealed by Okla.Sess.Laws 1967, c. 122, § 13, eff. April 27, 1967). Today the clerk charges *a separate $5.00 fee* for *entering the judgment upon the judgment docket. See* 12 O.S.1991 § 1771.1.

*for some but not for all purposes.*[82]

The symmetry we preserve today, which concededly falls short of perfection, is *essential*—not simply for its own sake—but also because the legislature doubtless intended that a general unreserved verdict becomes *efficacious qua judgment for all purposes at the same time*, whether it be for computing postjudgment interest,[83] for issuing execution,[84] for bringing an appeal, or for suspending a judgment's effectiveness pending its appellate review. After all, appeals are but a continuation of the same case after judgment.[85]

### E

### THIS COURT MAY NOT SUBSTITUTE ITS JUDGMENT FOR THE WILL OF THE LEGISLATURE THAT IS CLEARLY EXPRESSED IN A STATUTE [86]

■ The title of an act is *an additional guide* to ascertaining legislative intent.[87] The words *"restoring prior law"* appear in the title of the act we construe today. *Had the legislature intended that the clerk-entered general unreserved verdict be anything*

*other than a judgment for all purposes, it would not have fully restored the provisions of § 696 nor repealed those in § 1001.*

The dissents propose to run a rescue mission for dilatory lawyers. They hope to bring about the well-nigh unattainable goal of dismissal-proof appeals,[88] but nonetheless fall short of achieving complete uniformity. Under the provisions of § 993A, which prescribe appeal time for interlocutory decisions, the time would still run from the *pronouncement* rather than from the *filed entry's date.*[89] Our adoption of the dissents' approach would hence bring about uniformity for only *some appeals*, leaving to sheer conjecture the point in time when interest would begin to accrue, execution may issue, vacation quests be brought, or dormancy occur.[90] The dissents hope to save this appeal from dismissal but cannot accomplish their goal without judicial disregard of plain legislative intent.

■ Once transmuted into judgment by force of § 696.1 upon its unreserved acceptance and entry into the judgment roll, a general jury verdict becomes a judgment that is *enforceable, appealable and subject to supersedeas as well as to accrual of post-*

---

**82.** If the dissents' views were to be adopted today, the trigger for the thirty-day period for *vacation of judgments* would become clouded. The pertinent terms of 12 O.S.1991 § 1031.1 are:

   *"Within thirty (30) days after the rendition of a judgment*, the court, of its own initiative or on motion of a party, may correct, open, modify or *vacate a judgment.* [Emphasis provided.]

**83.** The pertinent terms of 12 O.S.1991 § 727 are:

   "All *judgments* of courts of record *shall bear interest* at a rate prescribed pursuant to subsection B of this section ... from the date of *rendition.* * * *" [Emphasis provided.]

**84.** Undertakings to stay execution under 12 O.S. 1991 § 968.1 and other statutory provisions that govern a judgment's enforcement are linked to those for perfecting an appeal.

**85.** *Mabee Oil & Gas Co. v. Price*, 198 Okl. 510, 179 P.2d 916, 918 (1947).

**86.** *Ind. School Dist. v. Okl. City Fed. of Tchrs.*, Okl., 612 P.2d 719, 724 (1980).

**87.** *Ind. School Dist., supra* note 86, 612 P.2d at 722.

**88.** Even where uniformity appears to carry the day, there will always be room for lawyers to make mistakes. *See*, e.g., *Allen v. Horinek*, 827 F.2d 672, 673 (10th Cir.1987), where an appeal was dismissed because it was filed *too early.* Premature appeals are not unknown to our own jurisprudence. *See Matter of Estate of Nation*, Okl., 834 P.2d 442, 443 (1992).

**89.** The pertinent terms of 12 O.S.1991 § 993A provide that an appeal of certain interlocutory orders may be brought "within thirty (30) days after the order is issued."

**90.** The pertinent terms of 12 O.S.1991 § 735 are:

   "If execution is not issued and filed as provided in Section 759 of this title or a garnishment summons is not issued by the court clerk *within five (5) years after the date of any judgment* that now is or may hereafter be rendered in any court of record in this state ... such judgment shall become unenforceable and of no effect, and shall cease to operate as a lien on the real estate of the judgment debtor...."
   Under one dissent's analysis, the five years *might* start to run on the date judgment was given by operation of § 696.1, *or it could* run from the date a judge-signed memorialization was filed.

*judgment interest. Recognizing the same temporal points for all incidents of a judgment fulfills the legislature's intent to restore the prior law, preserves the needed symmetry of the present procedural regime* [91] *and protects both litigants and courts from a veritable nightmare.* [92]

## F

### IN THE ABSENCE OF *ANY COMPELLING REASON* TO OVERRULE *JACO*, WE MUST FOLLOW ITS TEACHINGS AND APPLY THEM TODAY TO THIS APPEAL

■ Simply stated, *stare decisis* means to abide by decided cases.[93] This time-honored rule "serves to take the capricious element out of law" [94] and give it stability. *Jaco* has settled the outcome of today's quest for dismissal; its teachings must govern here. Unless precedents are "palpably bad," judicial surgery in upsetting them must be avoided.[95] The dissents suggest *no cogent reason* to discard *Jaco;* [96] they merely press for adoption of an alternative analysis of the applicable statutes. *Their counsel, if accepted, would reinstate a procedural design that the legislature has already tried and expressly eliminated from the body of our statutory law.*

■ When the justices of the United States Supreme Court are called upon to reassess their commitment to a prior holding as binding precedent under the doctrine of *stare decisis,* they must appraise (1) whether the rule has proved to be intolerable by defying practical workability, (2) whether the rule is subject to the sort of reliance that would add special hardship to the consequences of overruling and inequity to the cost of repudiation, (3) whether related principles of law have developed so far that the old rule remains no more than a remnant of abandoned doctrine and (4) whether facts have so changed or come to be viewed so differently that the old rule has been robbed of significant application or justification.[97]

We must be mindful of these factors as we revisit *Jaco* today. *Jaco's* authority does not suffer from *unworkability. Jaco's* teachings have been applied at least ten times since it became effective in February 1992; only *one other dismissal* precipitated by *Jaco* has come to our attention.[98] *Jaco's* approach is more practical by far than that counseled by the dissents. Under the latter, once the triers have spoken, entry of judgment could lag while the journal entry is being crafted. A time-honored rule of practice casts on the victorious party the responsibility of preparing a journal entry. The appealing party—nearly always the defeated litigant—has no firm control over the process. *Jaco's* more workable solution eliminates judicial and party control over the judgment's entry; [99] *pure*

---

**91.** For the statutory symmetry of an executable judgment's entry for three different classes of deciding mechanism under 12 O.S.1991 §§ 22 *et seq., see* the Appendix to this opinion.

**92.** If the dissents' legislatively rejected approach were adopted today, judges would have the power to alter the incidence of a general unreserved jury verdict by postponing the filing of its memorialized entry. The judgment debtor might be subjected to successive executions before appeal time starts to run. Uncertainty over when the judge might sign a memorialized entry could create confusion in setting the penal sum for supersedeas or stay bonds and foster additional litigation over whether the judgment debtor received due notice that a judge-signed entry had been filed. For additional explanation, *see infra* note 99.

**93.** BLACK'S LAW DICTIONARY 1261 (5th ed. 1979).

**94.** William O. Douglas, STARE DECISIS, 49 Colum.L.Rev. 735, 736 (1949).

**95.** *Edge v. Smith,* Okl., 284 P.2d 711, 715 (1955); *Jackson v. Twin State Oil Co.,* 95 Okl. 96, 218 P. 324, 328 (1923); *Webb v. Semans,* 110 Okl. 72, 235 P. 1074, 1077 (1925).

**96.** One dissent hints that *Jaco's* teachings have resulted in a large number of dismissals; we know of only one. *See infra* the text at note designation 98 and *Day, supra* note 28.

**97.** *Planned Parenthood, infra* note 115, —— U.S. at ——-——, 112 S.Ct. at 2809–2816.

**98.** *See Day, supra* note 28.

**99.** We have long refused to permit a trial court to extend the time for taking an appeal by *vacating the judgment from which appeal is sought and reentering it at a later date. Starr v. Woods,* 162 Okl. 242, 19 P.2d 561, 562 (1933).

*legal process effects the judgment. Above all, Jaco's teaching represents fidelity to the recent legislative reaffirmation of its will to repudiate the common-law practice that made verdicts depend on judicial imprimatur, and gives full effect to the repeal of yesterday's requirement for a judge-signed journal entry after a general unreserved jury verdict.*

The consequences of overruling *Jaco* could indeed cause (a) hardship to present and future litigants who might encounter delay in obtaining a judge-signed journal entry, (b) inequities to those whose cases have been decided under *Jaco,* (c) disservice to lawyers, courts, and litigants alike by making them subject to yet *another* change in procedure and (d) subversion of the court's legitimacy and erosion of public confidence in the court's decisions. No recent development has robbed *Jaco* of its soundness; its controlling rule *has been expressly reaffirmed at least ten times since February 1992.*[100] *In sum, the arguments advanced by the dissents for Jaco's demise offer no compelling reason to depart from settled law in favor of judicial abrogation of a freshly reenacted legislative mandate.*

## III

## ORDERLY PROCESS MANDATES THAT WE APPLY *JACO* TO TODAY'S APPEAL

█ This court's reviewing cognizance is *invocable* only "in the manner provided by law." Art. 7, § 4, Okl. Const.[101] We are *powerless* to entertain a plea for corrective relief lodged *after* the expiration of maximum statutory time. Failure to bring a timely appeal constitutes a *jurisdictional* defect.[102] By operation of 12 O.S.1991 § 990A,[103] viewed in conjunction with § 696.1,[104] the appealable event for common-law actions resolved by a general unreserved verdict arises upon the clerk's *filing of the jury verdict, qua* the court's judgment, *preparatory to its entry* upon the judgment roll.[105] Appeal must be lodged within *thirty days* of such verdict's *filing.*[106]

█ Judgment in this case was *filed* on March 6, 1992. This was accomplished in the following sequential stages: (1) after the jury returned from deliberation, the verdicts were read aloud; (2) the court examined the verdict forms and showed them to the lawyer; (3) the judge announced he would "accept the verdict forms as rendered" and enter "these verdicts as a judgment in the case;" (4) the verdicts were filed to await their entry on the judgment roll and on the court's judgment docket. *By operation of § 696.1 these verdicts ripened eo instante into a "filed judgment" in the case.* Nothing remained to be done after March 6. The *March 26 journal entry, although perhaps critical for securing the court's review,*[107] *did not trigger appeal time.*

100. *See supra* note 28.

101. The pertinent terms of Art. 7, § 4, Okl. Const., provide:
    "The appellate jurisdiction of the Supreme Court shall be coextensive with the State and shall extend to all cases at law and in equity; * * * *The appellate and the original jurisdiction of the Supreme Court and all other appellate courts shall be invoked in the manner provided by law.*" [Emphasis provided.]

102. 12 O.S.1991 §§ 990A and 992; *Presbyterian Hosp. v. Bd. of Tax–Roll Corr.,* Okl., 693 P.2d 611, 615 (1984); *Western Okl. Chapter Etc. v. State Etc.,* Okl., 616 P.2d 1143, 1147 (1980). For the pertinent terms of § 990A, *see supra* note 29. The terms of § 992 provide in pertinent part:
    "The parties may waive any defect or error in perfecting an appeal *except the timely filing of a petition in error....*" [Emphasis provided.]

103. For the terms of 12 O.S.1991 § 990A, *see supra* note 29.

104. For the terms of § 696.1, *see supra* note 1.

105. *See* 12 O.S.1981 § 696.1, *supra* note 1; *Jaco, supra* note 1, 823 P.2d at 364.

106. *See* 12 O.S.1991 § 990A, *supra* note 28; *Jaco, supra* note 1, 823 P.2d at 364.

107. The dissent's statement that because the terms of 12 O.S.1991 § 32.3 require a signed journal entry, appeal time must commence with its filing is incorrect. *Compare* § 990A, the statute that sets the *time for appealing from a judgment* or final order with § 32.3 that regulates the *content of the appellate record. See Johnson v. Johnson,* Okl., 674 P.2d 539, 542 (1983).

Jaco's effective date is *February 4, 1992;* [108] the general unreserved verdict in this case came on *March 6, 1992.* Jaco's [109] teaching clearly requires that this appeal be dismissed as untimely. Today's dismissal may *appear* harsh; *yet fundamental fairness in litigation process cannot be afforded except within a framework of orderly procedure.* [110] We cannot provide a dismissal-proof environment for lawyers. No area of the law may lay claim to exemption from the range of orderly procedure's basic strictures—not even the process by which a general unreserved jury verdict is transmuted into judgment by operation of § 696.1. Chaos, caprice and *ad hoc* pronouncements would inevitably follow from the slightest departure. *Procedural rules must be applied mechanically to avoid the uncertainties that arise when exceptions are created.* [111] *Evenhanded fairness calls for undeviating enforcement of conformity to orderly process.* [112]

## SUMMARY

Rodgers' claim for bodily injury and his wife's derivative claim for loss of consortium arose from Rodgers' *single pathogenic blood transfusion.* Each plaintiff had but a *single claim.* [113] Both were decided by the general unreserved verdict for all four defendants. *Any preserved error in the proceedings which culminated in the claims' submission would have been reviewable in a timely appeal from the judgment entered by force of § 696.1 upon the general unreserved jury verdict.*

If allowed to carry the day, the dissents would *(a) defer the verdict's effectiveness,* (b) make its legal force *dependent upon judicial intervention* and (c) substitute this court's will for that of the legislature by lawlessly *abandoning fidelity to the legislative history and to the text of § 696 that stands restored verbatim as § 696.1* Recent jurisprudence which effectuates the legislature's *unmistakable recommitment to § 696 and its intent to dispense with affirmative judicial action as a prerequisite for "entry" of a judgment—* Jaco *and its progeny* [114]—would have to stand *overruled. This scheme, if adopted, would cause us to (1) sacrifice the law's conceptual symmetry for the illusion of simplicity and uniformity, (2) ignore settled principles of statutory construction and (3) throw settled law to the winds without any semblance of a compelling reason. The court would be open to criticism that "justifiable reexamination of principles had given way to drives for particular results in the short term."* [115]

*The only judgment in this case was that "filed" and "entered" upon the judgment roll on March 6, 1992 in obedience to the command of § 696.1. The appeal must be dismissed as untimely.*

## APPEAL DISMISSED.

**108.** *Jaco* has governed ever since its effective date. *See* the cases *supra* note 28.

**109.** *See Jaco, supra* note 1, 823 P.2d at 364.

**110.** *" * * * It is procedure that spells much of the difference between rule by law and rule by whim or caprice.* Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law. * * *" [Emphasis provided.] *Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring).

**111.** *United States v. Indrelunas,* 411 U.S. 216, 222, 93 S.Ct. 1562, 1565, 36 L.Ed.2d 202 (1973).

**112.** *Snyder v. Smith Welding & Fabrication,* Okl., 746 P.2d 168, 171 n. 1 (1986) (supplemental opinion on rehearing); *Pryse Monument Co. v. District Court Etc.,* Okl., 595 P.2d 435, 438 (1979).

**113.** A single delictual occurrence gives rise to but one cause of action or to one legal claim. *Retherford, supra* note 14, 572 P.2d at 968–969.

**114.** *Jaco, supra* note 1, 823 P.2d at 364–365 and the cases *supra* note 28.

**115.** In an opinion which holds that the doctrine of *stare decisis* requires reaffirmance of *Roe v. Wade's* core holding, Justice O'Conner explains that overruling precedent *without the most compelling of reasons* would *overtax the country's belief in the judiciary's good faith* and cause *the Court's legitimacy to fade with the frequency of its vacillation. Planned Parenthood of Southeastern Pennsylvania v. Casey,* —— U.S. ——, ——, 112 S.Ct. 2791, 2815, 120 L.Ed.2d 674 (1992).

LAVENDER, V.C.J. and SIMMS and WATT, JJ., concur.

HARGRAVE, J., concurs by reason of stare decisis.

HODGES, C.J., ALMA WILSON and SUMMERS, JJ., and CHAPEL, S.J., sitting by designation in lieu of KAUGER, J., who recused, dissent.

## APPENDIX

### THE STATUTORY SYMMETRY OF AN EXECUTABLE JUDGMENT'S ENTRY FOR THREE DIFFERENT CLASSES OF DECIDING MECHANISM UNDER 12 O.S.1991 §§ 22 ET SEQ. (LAWS 1991, C. 251 §§ 1 ET SEQ.)

| Category I | Category II | Category III |
|---|---|---|
| **RESERVED GENERAL VERDICT, SPECIAL VERDICT, OR ADVISORY VERDICT IN EQUITY** (COURT SHALL". . . *ORDER* WHAT JUDGMENT SHALL BE ENTERED." 12 O.S.1991 § 697.1) | **UNRESERVED GENERAL VERDICT** (". . .[J]UDGMENT MUST BE ENTERED BY THE CLERK IN CONFORMITY TO THE VERDICT." 12 O.S.1991 § 696.1) | **JUDGE'S ORAL PRONOUNCEMENT OF JUDGMENT OR DECREE** |
| ↓ | ↓ | ↓ |
| COURT MINUTE | COURTROOM DEPUTY OR MINUTE CLERK (TAKES VERDICT INTO CUSTODY AND PLACES THE COURT'S DATE STAMP UPON ITS FACE. BY OPERATION OF LAW THE VERDICT OPERATES AS THE JUDGMENT IN THE ACTION.) | COURT MINUTE |
| ↓ | | ↓ |
| COURTROOM DEPUTY OR MINUTE CLERK | | COURTROOM DEPUTY OR MINUTE CLERK |
| ↓ | ↓ | ↓ |
| POSTED ON APPEARANCE DOCKET ·(12 O.S.1991 § 23) (NOT A JUDGMENT, NOT EXECUTABLE, NO AFFIDAVIT CAN BE FILED OR ENTRY MADE ON JUDGMENT DOCKET UNTIL COURT ORDERS WHAT JUDGMENT IS TO BE ENTERED. 12 O.S.1991 § 697.1) | POSTED ON APPEARANCE DOCKET (12 O.S.1991 § 23) | POSTED ON APPEARANCE DOCKET (12 O.S.1991 § 23) (NOT A JUDGMENT, NOT EXECUTABLE, NO AFFIDAVIT CAN BE FILED OR ENTRY MADE ON JUDGMENT DOCKET UNTIL JOURNAL ENTRY IS ON FILE.) |
| ↓ | ↓ | ↓ |
| JOURNAL ENTRY FILED *(AT ONCE EXECUTABLE AS JUDGMENT)* | RECORD PROPER (12 O.S.1991 § 32.1) *(AT ONCE EXECUTABLE AS JUDGMENT)* | JOURNAL ENTRY FILED *(AT ONCE EXECUTABLE AS JUDGMENT)* |
| ↓ | ↓ | ↓ |
| RECORD PROPER (12 O.S.1991 § 32.1) | AFFIDAVIT AND JUDGMENT DOCKET (12 O.S.1991 § 25.1) | RECORD PROPER (12 O.S.1991 § 32.1) |
| ↓ | ↓ | ↓ |
| JOURNAL (12 O.S.1991 § 24) | JOURNAL ENTRY FILED TO MEMORIALIZE VERDICT FOR APPEAL | JOURNAL (12 O.S.1991 § 24) |
| ↓ | ↓ | ↓ |
| AFFIDAVIT AND JUDGMENT DOCKET (12 O.S.1991 § 25.1) | JOURNAL (12 O.S.1991 § 24) | AFFIDAVIT AND JUDGMENT DOCKET (12 O.S.1991 § 25.1) |

CATEGORY I: Under the terms of 12 O.S.1981 § 697 (now 12 O.S.1991 § 697.1), construed together with 12 O.S. 1991 § 990A, no judgment exists until the court's affirmative approval of a special verdict is effected by a filed journal entry.

CATEGORY II: The terms of 12 O.S.1981 § 696 and of its progeny, § 696.1, construed in conjunction with § 990A, require no judicial approval for a verdict to become the court's judgment in the action. Peoples Electric Co-op. v. Broughton, 191 Okl. 229, 127 P.2d 850, 853 (1942); Jaco Production Co. v. Luca, 823 P.2d 364 (1991).

CATEGORY III: As in Category I, no judgment exists until it is effected by a filed journal entry. 12 O.S.1991 § 990A.

ALMA WILSON, Justice, dissenting:

In resolving the jurisdictional question—when did the appeal time in this case begin to run—the majority classifies "common law actions" for special appellate treatment. Under today's opinion, an unreserved general verdict in a "common law action" tried to a jury becomes the appealable judgment of the court when it is **entered by** the court clerk. That is, the appeal time will run from the rendering of the jury verdict. Further, under today's opinion, appeal from an unreserved jury verdict in a "common law action" is restricted to those issues submitted to the jury. That is, the parties are denied a right to appeal issues not submitted to the jury. Classification of "common law actions" separate and distinct from other civil actions for limitation of appeal time and restriction of appealable issues is untenable.[1] It is inconsistent with 12 O.S.1991, § 2002, which provides that "[t]here shall be one form of action to be known as 'civil action.'" It has a chilling affect on the right to a trial by jury[2] and access to the courts.[3]

In this medical malpractice case, the trial court sustained several of defendants' demurrers to the evidence. The general verdict returned by the jury did not dispose of the warranty, fraud and misrepresentation issues which were withheld from the jury. The petition in error seeks review of errors committed by the trial court in sustaining the mid-trial demurrers to the evidence. In deciding the untimeliness of this appeal, the majority finds that under our transitional approach to "causes of action" appellants are not entitled to an appeal from the trial court's mid-trial rulings on the demurrers to the evidence—that the only appealable issues are those determined by general jury verdict. I disagree.

The appellants have a right to appeal the sustaining of appellees' mid-trial demurrers to the evidence. The appeal must be perfected within thirty days of the recording of the judgment that disposes of all the issues.[4] The petition in error herein was filed within thirty days of the recording of the trial court's judgment.[5]

Trial was had in this case approximately one month before publication of our order in *Jaco Production Company v. Luca*, 823 P.2d 364 (Okla.1991), holding that the appeal time

---

1. Serious procedural confusion is certain under today's opinion. Case by case, the appellate courts will have to classify actions as "common law" or "not common law." This civil action, based on medical malpractice or medical negligence, fraud, misrepresentation, consent and warranty theories, is classified as a "common law action," even though those theories are recognized in our statutes. In our order in *McGinnis v. Republic–Underwriters Insurance Company*, 830 P.2d 191 (Okla.1992), this Court refused to apply *Jaco Production Company v. Luca*, 823 P.2d 364 (Okla.1991). We said that a special statutory postjudgment garnishment proceeding is not a "common-law action." However, 12 O.S.1991, § 1177 provides that the issues in a postjudgment garnishment "shall stand for trial as a civil action."

2. Okla. Const., art. 2, § 19. In deciding to exercise their constitutional right to trial by jury, litigants must consider the risk that appeal may be restricted to the issues given to the jury.

3. Okla. Const., art. 2, § 6. The denial of an appeal of issues withheld from a jury closes the courts to those issues.

4. 12 O.S.1991, §§ 681 and 990A; *Federal Deposit Insurance Corporation v. Tidwell*, 820 P.2d 1338 (Okla.1991); *DBL Energy Corp. v. Oklahoma Cor-*

*poration Commission*, 805 P.2d 657 (Okla.1991); *Reeves v. Agee*, 769 P.2d 745 (Okla.1989); *Eason Oil Company v. Howard Engineering, Inc.*, 755 P.2d 669 (Okla.1988); *Methvin v. Methvin*, 191 Okl. 177, 127 P.2d 186 (1942); and *Hurley v. Hurley*, 191 Okl. 194, 127 P.2d 147 (1942).

5. The journal entry, memorializing the mid-trial rulings and granting judgment on the jury verdict, was filed on March 26, 1992, and provides:

On March 6th, Plaintiffs completed their evidence and rested and the Defendants interposed demurrers on the warranty claim which was sustained; on the fraud and misrepresentation claim which was sustained; on the consortium claim which was overruled; and the informed consent claim which was overruled. The Defendants proceeded to put on evidence and rested on March 6th. There being no rebuttal, the Court instructed the jury and closing arguments were made by both sides. After due deliberation, the jury returned into open court with their ten (10) person verdict signed by ten (10) jurors. The Court examined the verdict forms as well as the attorneys and there being no request to poll the jury, the Court received and accepted the verdict in favor of the Defendants.

The petition in error was filed with this Court on April 17, 1992.

runs from the record entry of the unreserved general jury verdict. The majority writes that we cannot "flippantly ignore the doctrine of **stare decisis** and overrule *Jaco* merely because an unwary litigant missed the deadline for filing an appeal." Refusal to adhere to *Jaco* in this case does not ignore the doctrine of **stare decisis**. *Jaco* was not an appeal from mid-trial orders sustaining demurrers to the evidence. *Jaco* is inapposite. *Jaco* is not authority for denying a party the right to an appeal from the mid-trial sustaining of demurrers to the evidence; nor does it intimate that the appeal time shall be calculated from the entry of a jury verdict on the appearance docket.[6]

The *Jaco* holding rests upon 12 O.S.1991, § 696.1.[7] Section 696.1 provides:

When a trial by jury has been had, **judgment must be entered by the clerk in conformity to the verdict,** unless it is special, or the court order the case to be reserved for future argument or consideration. [Emphasis added.]

The only sensible and reasonable reading of the plain words of § 696.1 is that it specifies a duty of the various court clerks—when entering a judgment, the court clerk must

ascertain that the judgment conforms to the verdict. This reading is consistent with 12 O.S.1991, § 32.3 which provides:

A. It is the duty of the court to write out, sign and record its orders, judgments and decrees **within a reasonable time after rendition....**

B. A recorded written order, judgment or decree **signed by the court is a jurisdictional prerequisite to appellate review.** [Emphasis added.]

Nothing in § 696.1 indicates a legislative intent to dispense with the appellate jurisdictional prerequisite plainly set out in § 32.3.[8] Nothing in § 696.1 indicates a legislative intent to "transform" an "unreserved general jury verdict" in a "common law action" into the appealable judgment of the court.

Under today's ruling, the appeal time in those "not common law actions" will run from the filing of the written journal entry signed by the trial judge in accordance with the latest statutory changes and the parties will be entitled to appeal all issues raised before the trial court, including issues withheld from the jury. But, the appeal time in "common law actions" tried to a jury will continue under the old appellate regime—the appeal time will be triggered by the pronouncement

---

**6.** In *Martin v. Liberty National Bank and Trust Company of Oklahoma City, Oklahoma,* 839 P.2d 179, 180 (Okla.1992), we said that "an appealable judgment is entered when a record entry was signed" by the judge. Consistent with *Martin,* the majority opinion correctly says that "(r)ecord entry is never effected by a clerk's minute posted on the appearance docket; the appearance docket is nothing more or less than a chronological index of filings and an abstract of significant courtroom events." Yet, it is the appearance docket entry that is before this Court. It is the mere **entry** of the jury verdict in the appearance docket which the majority finds triggered the appeal time.

Attached to appellant's response to the dismissal request is a copy of the Daily Minutes for March 6, 1992 filed in the office of the Tulsa County Court Clerk on March 11, 1992, which is substantially the same as the entry on the appearance docket attached to appellees' dismissal request. The appearance docket is labeled "Civil Action Docket, Clerk of Court, Tulsa County, Oklahoma, Judge, DIV-D-7—Hon. D.J. BOUDREAU, File Date, 05/25/90, Case ID CJ-TU-90-002558-07, Medical Mal-Practice." The entry under the date of March 6, 1992, is an abstract of the trial proceeding, including the verdict re-

turned by the jury and accepted and recorded by the trial court.

**7.** Prior to 1990, the thirty day time in which an appeal could be perfected was triggered by the pronouncement of judgment. *Martin v. Liberty National Band and Trust Company of Oklahoma City, Oklahoma,* 839 P.2d 179 (Okla.1992). In 1990, the statutes were amended providing the appeal time be calculated from the filing of the judgment. 1990 Okla.Sess.Laws, ch. 251, § 4. The filing of the judgment is the event which begins the appeal time limitation under the latest amendments. 1991 Okla.Sess.Laws, ch. 251.

**8.** Strictly adhering to § 32.3, in *Martin v. Liberty National Bank and Trust Company of Oklahoma City, Oklahoma,* 839 P.2d 179 (Okla.1992), we rejected a minute order initialed by the judge as an appealable judgment, finding that the legislature clearly and explicitly required the signature of the judge as a jurisdictional prerequisite to appellate review. Section 696.1, as well as §§ 32.3 and 990A were amended and/or reenacted in 1991. 1991 Okla.Sess.Laws, ch. 251. Our construction of § 696.1 should be consistent with the other provisions of the 1991 law.

or when the trial court accepts the general jury verdict and discharges the jury. I find no reason to transform an unreserved jury verdict in **any** action into the appealable judgment of the court.

In this case, judgment was rendered on March 6, 1992, when the trial court accepted the verdict and discharged the jury. The judgment signed by the trial judge and entered in the record on March 26, 1992 is the appealable judgment. Accordingly, this appeal is timely. I dissent to dismissal of this appeal and join the dissent by Justice Summers.

SUMMERS, Justice, dissenting.

My analysis of the relevant statutes is that when a judgment is pronounced on a jury verdict the thirty-day time to appeal begins to run from the date the journal entry of judgment is *filed* in the case. This analysis is contrary to the court's recent opinion in *Jaco Production Co. v. Luca,* 823 P.2d 364 (Okla.1991), and, of course, to today's case.

Prior to January 1, 1991 an appeal was commenced in this Court by filing a petition in error within thirty days of the date of the final order or judgment. 12 O.S.1981 § 990.[1] In *Warehouse Market, Inc. v. Berry,* 459 P.2d 853 (Okla.1969) we decided that "the date of the ... judgment" was the date the judgment was pronounced and became effective. This view followed long standing precedent.[2] In *Warehouse Market* we also contrasted the date a judgment was pronounced

with the date the journal entry of judgment was filed. *Id.* 459 P.2d at 854.

Beginning on January 1, 1991 prior law was repealed[3] and the thirty-day appeal time began to run only when the judgment was "filed" with the district court clerk. 12 O.S.Supp.1990 § 1004.[4] The judgment was not the pronouncement from the bench, but an instrument whose form was prescribed by statute. 12 O.S.Supp.1990 § 1001. Sections 1001 and 1004 were in effect for only five months.[5]

Starting June 1, 1991, and continuing to the present, the thirty-day appeal time begins to run on the date *"judgment is filed."* 12 O.S.1991 § 990A.[6] While documents and exhibits can be filed, an oral declaration or "pronouncement" cannot. Thus, this new statutory scheme retained the concept of a judgment, for the purposes of computing time to appeal, as being some instrument filed in the case, and rejected the idea that time to appeal would run from the date the judgment was pronounced. Section 990A does not specify the form or nature of the instrument to be filed, and that is part of the problem in this case.

The majority's analysis on calculating the time to appeal this judgment based on a jury's verdict can be expressed by this syllogism:

1. The verdict is a judgment.

2. The verdict was filed on the day it was returned.

---

1. Section 990 stated in part: "An appeal to the Supreme Court may be commenced from an appealable decision of a court or tribunal by filing with the Clerk of the Supreme Court a petition in error, within thirty (30) days from the date of the final order or judgment sought to be reviewed."

2. Historically, a judgment was considered an act of a court and was thus dated from the rendition or pronouncement by the court and not its entry. See *Mooney v. First State Bank,* 48 Okla. 676, 149 P. 1173, 1175 (1915) where the court discussed Revised Laws 1910 § 5138 (now 12 O.S. 1991 § 696.1) and *In re McQuown,* 19 Okla. 347, 91 P. 689 (1907).

3. 12 O.S.1981 § 990 repealed by Laws 1990, c. 251, § 20, eff. Jan. 1, 1991.

4. 12 O.S.Supp.1990 § 1004 stated in part: "An appeal from a judgment or appealable order of a court or tribunal may be commenced by filing a petition in error with the Clerk of the Supreme Court within thirty (30) days after the date of the judgment or appealable order sought to be reviewed. For the purpose of an appeal, the date of judgment shall be the date it was filed with the court clerk."

5. 12 O.S.Supp.1990 §§ 1001 and 1004 were repealed by Laws 1991, c. 251, § 22 eff. June 1, 1991.

6. Section 990A states in part: "An appeal to the Supreme Court may be commenced by filing a petition in error with the Clerk of the Supreme Court within thirty (30) days from the date the final order or judgment is filed."

3. Therefore, the judgment was filed on the day the verdict was returned.

My departure from this analysis begins with its first premise. A verdict is not a judgment. Not under the common law, and not under 12 O.S.1991 § 696.1.

The majority recognizes that at common law a verdict is not a judgment. It concludes, however, that § 696.1 [7] transforms a verdict *"eo instante"* into a judgment. I disagree with this theory of transmogrification. When a jury trial has occurred a "judgment must be entered by the clerk in conformity with the verdict". 12 O.S.1991 § 696.1. The judgment pronounced (or accepted) by the court upon the verdict is "entered" on the appearance docket by the clerk. Title 12 O.S.1991 § 23 provides that the clerk has the duty to "enter" on the appearance docket "an abstract of all judgments and orders of the court".[8]

Section 696.1 simply requires a clerk to enter a judgment on the proper court record conforming to a verdict. The judgment is deemed to have been "rendered" by operation of law; i.e., "the judgment is, by operation of law, rendered when the verdict of the jury is returned and accepted." *Peoples Electric Co–Op. v. Broughton,* 191 Okla. 229, 127 P.2d 850, 853 (1942). But neither the verdict nor the entry amounts to the judgment. As we explained in *Walker v. St. Louis San Francisco Ry.,* 671 P.2d 672, 673 (Okla.1983), it is the judge, not the clerk by its entry, nor the jury by its verdict, who renders judgment in a case tried to the jury. See also *Ashinger v. White,* 106 Okla. 19, 232 P. 850 (1924), where after a verdict was returned *no judgment was pronounced* on the verdict by the court, nor entered on the journal, though the verdict was entered on the appearance docket.

Entering a judgment deemed to have been pronounced by the court is not a judicial act, but a ministerial one. "Entry of judgment" is defined as "a ministerial act performed by the clerk of the court by means of which permanent evidence of [a] judicial act in rendering judgment is made a record of the court." *Black's Law Dictionary,* 625 (4th ed. 1951). Our case-law is in agreement; "The entry of judgment ordinarily consists of the ministerial act of spreading the same upon the proper judgment record or writing it at large in the book of judgments." *De Watteville v. Sims,* 44 Okla. 708, 146 P. 224, 227 (1915). *See also Abernathy v. Huston,* 166 Okla. 184, 26 P.2d 939, 944 (1933); *City of Clinton v. Cornell,* 191 Okla. 600, 132 P.2d 340, 342 (1942); *Miller v. Miller,* 664 P.2d 1032, 1034 (Okla.1983). The entry is not the judgment, but a record or evidence of a judgment. *Abernathy v. Huston,* 166 Okla. 184, 26 P.2d 939, 944 (1933); *Boynton v. Crockett,* 12 Okla. 57, 61, 69 P. 869, 871 (1902).

And, of course, entry of a judgment is not synonymous with rendering or pronouncing a judgment. *Peoples Electric Co–Op. v. Broughton,* 127 P.2d at 853. *See St. Louis & S.F.R. Co. v. Taliaferro,* 58 Okla. 585, 160 P. 610, 612 (1916), (we explained that at that time an appeal must have been brought within six months of the *rendition* of the judgment, and not within six months from the "entry" of the judgment); *Jaqua v. Harkins,* 40 Ind.App. 639, 82 N.E. 920, 922 (1907); *Beetchenow v. Bartholet,* 162 Wash. 119, 298 P. 335, 336 (1931). Thus, the act of entering a judgment is a ministerial act, distinct from the judicial act of pronouncing a judgment.

Likewise, the "entry" of judgment cannot be equated with "filing" of a judgment. "Filing" is defined as "[t]o deliver an instrument or other paper to the proper officer for the purpose of being kept by him in the proper place." *Black's Law Dictionary,* 755 (4th ed. 1951). Filing a document, and entry of an order or judgment refer to two different

---

7. "When a trial by jury has been had, judgment must be entered by the clerk in conformity to the verdict, unless it is special, or the court order the case to be reserved for future argument or consideration." 12 O.S.1991 § 696.1. This statute is not new, as its former codification at 12 O.S. 1981 § 696 dates back to Territorial days. See Statutes of Oklahoma Territory, 1893 § 4300.

8. At one time a clerk was required to enter a judgment on the judgment docket upon rendition of the judgment. *See, e.g.,* 12 O.S.1941 § 25. Now a judgment need not be entered on the judgment docket until after the rendition of judgment and the filing of an affidavit of judgment. 12 O.S.1991 § 25.

procedures. In *State ex rel. Morgan v. Lamm*, 9 S.D. 418, 69 N.W. 592 (1896) the Supreme Court of South Dakota explained the difference between the terms "entry" and "filed", noting that an "entry" is "[r]ecording in due form and order a thing done in court" and to "file" is "receiving a paper into custody, and giving it a place among other papers". *Id.* 69 N.W. at 592. The court said: *"The terms 'entered' and 'filed' frequently occur in the statute, but they are never used as synonymous terms." Id.* (Emphasis mine). This court subsequently defined the term "filed" and in doing so relied upon the South Dakota decision. *Aaron v. Farrow*, 113 Okla. 27, 238 P. 202, 204 (1925).

These opinions make perfect sense, because a clerk has a dual duty (1) to make the proper "entry" on a docket, 12 O.S.1991 § 696.1, and (2) to "file together and carefully preserve in his office, all papers delivered to him for that purpose in every action or special proceeding." 12 O.S.1991 § 29. The clerk does not "enter" together papers delivered to him or her in a case, and neither does the clerk "file" an entry on a docket. The term "filed" cannot be equated with "entry", and when a judgment is "entered" upon the proper court record the same act is not properly described as a "filing". Thus, when the clerk enters an abstract of judgment pronounced on a jury verdict that "entry" does not constitute the *filing* of a judgment so as to start the thirty-day time to appeal.

I conclude that a clerk's "entry" on a docket is a distinct and separate act from when an instrument is "filed" in a case, that both of these are distinct from the act of pronouncement or rendition of a judgment, and all may occur on different dates. It is true that the clerk will often fulfill his or her duty by entering a judgment on the proper docket upon the date the verdict is returned, i.e., upon rendition. That was done in this case. But we are concerned here with *the nature of the instrument required by § 990A to be "filed" as a judgment for the purpose of appeal.*

While a verdict may be filed in the case and used to enter a judgment on the proper docket, it cannot be "filed" *as* a "judgment", since the verdict itself is not a judgment.

The majority appears to hold that a verdict *is* the judgment for the purpose of an appeal when the verdict is filed in the case. I must respectfully disagree.

In my view, it is the journal entry of judgment that satisfies the descriptive statutory phrase in our present § 990A. This maintains the recognized legal distinctions in the terms used by the legislature commencing January 1, 1991 and continuing to date, as well as the long recognized distinctions between a "verdict" and a "judgment". The Legislature could have started appeal time from the date the judgment becomes effective, or is rendered, or entered, or when a verdict is returned or filed, but it chose not to do so. It said "from the date the *final order or judgment is filed.*" (emphasis mine) It made no attempt to distinguish between judgments based on common law jury verdicts, judgments based on non common-law jury verdicts, or judgments rendered by the court without a jury. My analysis of these statutes would require the time to appeal from a judgment on a jury verdict to begin when the journal entry of judgment is filed in the case. 12 O.S.1991 § 990A. Such a view *treats all trial court judgments the same* for calculating time to appeal, and avoids the majority's result of unnecessarily creating a subclass of judgments that may escape appellate review because of unwary litigants. Here I believe judgment was rendered, and entered, on March 6, but not filed until March 26, which would make timely the Petition In Error filed April 17, 1992.

The majority misreads this writing. Of course there is only one judgment upon a single cause of action. That judgment occurs when it is rendered, or pronounced. In this case judgment was rendered when the court accepted the verdict of the jury, on March 6th. The Legislature, in a commendable attempt to bring clarity and uniformity to appeals, has gone out of its way to declare that the time for appeal no longer starts when the judgment is rendered, but rather when it is filed. It is only on what constitutes the filing of a judgment that I differ from the majority—I maintain that the verdict itself is not a judgment, and that the judgment, though in existence and even "entered", is not "filed"

for purposes of starting appeal time until the journal entry reaches the clerk's hands.

The majority yearns for symmetry in the appeals process, but does not, and in fact cannot, extend it. *Jaco* itself creates great unevenness, but whether *Jaco* is retained or rejected, there will still remain the fact that in a bench-tried case the judgment will be rendered and effective the moment it is pronounced, but the time to appeal it will not commence until filing of the journal entry. The legislature has so spoken. I believe the law should be, and, in fact, is, the same for jury-based judgments. Section 696.1 does not mandate otherwise. I respectfully submit that if symmetry in the appellate process is a goal, *Jaco* is not a solution.

The principle of *stare decisis* is that courts often uphold principles from prior opinions even though they would decide otherwise were the question a new one, and consider the importance of the law's stability and the effect of judicial holdings upon property, contracts, and titles. *Oklahoma Preferred Finance & Loan Corp. v. Morrow,* 497 P.2d 221, 223–224 (Okla.1972); *Oklahoma County v. Queen City Lodge No. 197, I.O.O.F.,* 195 Okla. 131, 156 P.2d 340, 345 (1945); *Webb v. Semans,* 110 Okla. 72, 235 P. 1074 (1925), (Syllabus by the Court). But the court will not follow prior opinions when they are manifestly erroneous and there are cogent reasons for overruling them. *Oklahoma County v. Queen City Lodge No. 197, I.O.O.F., supra.* More recently we have said that a substantial departure from precedent should be based upon either unsatisfactory experience with the application of the precedent, or in light of an altered historic environment. *Phillips v. Oklahoma Tax Commission,* 577 P.2d 1278, 1285–1286 (Okla.1978). This rule applies to matters of procedure. *Harris v. Hudson,* 122 Okla. 171, 250 P. 532, 533 (1926), *cert. denied,* 273 U.S. 743, 47 S.Ct. 336, 71 L.Ed. 869 and *cert. denied sub nom. Owens v. Harris,* 273 U.S. 743, 47 S.Ct. 336, 71 L.Ed. 869 (1927), (the supremacy of the law can be maintained only by and through the orderly procedure prescribed by the law itself).

I believe *Jaco* was erroneous when it was decided and is still erroneous. As to its "experience in application", one only has to look to the majority opinion, which cites several very recent cases invoking the rule of *Jaco,* although it has had but a short lifetime. If only two, as the opinion states, have resulted in dismissals, that low number may be attributed to the prospective application given the doctrine. It is safe to predict there are others in the same pipeline as today's appellant, and that more will follow. *Jaco* established a continuing trap for the unwary litigant who relies on the statutory language only to have his or her right to appeal lopped off. The case should be overruled and this appeal held timely.